In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1313

ADAM DELGADO,

*Petitioner,*

*v.*

MERIT SYSTEMS PROTECTION BOARD,

*Respondent.*

Petition for Review of a Decision of the
Merit Systems Protection Board.
No. CH-1221-14-0737-W-1

SUBMITTED OCTOBER 31, 2016* — DECIDED JANUARY 29, 2018

AMENDED ON PETITION FOR REHEARING, JUNE 19, 2018

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See Fed. R. App. P. 34(a)(2)(C).

Before ROVNER, WILLIAMS,** and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This federal whistleblower case presents our first review of a decision of the Merit Systems Protection Board since Congress expanded judicial review beyond the Federal Circuit, at least temporarily. Petitioner Adam Delgado is a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. He alleges that his supervisors retaliated against him after he reported his suspicions that another agent had improperly shot at a fleeing suspect, provided an inaccurate report of the incident, and testified falsely about it in a federal criminal trial.

Delgado filed a whistleblower complaint with the Office of Special Counsel (OSC), the federal office charged with investigating allegations that an agency has violated the Whistleblower Protection Act by retaliating against its employee for, as relevant here, disclosing "any violation of law, rule, or regulation." See 5 U.S.C. §§ 1214(a)(1)(A), 2302(b)(8). The OSC declined to investigate. It told Delgado that he had not made a disclosure protected by the statute and that he had failed to provide sufficient evidence to support his allegations of retaliation.

Delgado then appealed to the Merit Systems Protection Board, but the Board dismissed his appeal for lack of jurisdiction. The Board reasoned that Delgado had not satisfied the requirement that he "seek corrective action before the Special Counsel before seeking corrective action from the Board." See 5 U.S.C. § 1214(a)(3). According to the Board, Delgado could

---

** Circuit Judge Williams retired on January 16, 2018 and did not participate in the decision of this appeal. The petition for review is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

not prove that he made a "protected disclosure" or gave the OSC enough information to launch an investigation. Delgado has petitioned for judicial review of the dismissal of his appeal. See 5 U.S.C. § 7703(a). We find that the OSC and the Board applied unduly stringent and, we believe, arbitrary requirements on Delgado.

First, the Board dismissed Delgado's appeal because he did not include a copy of his complaint to the OSC. Applicable statutes and rules do not impose that requirement, and if there were any question about what Delgado submitted to the OSC, the easiest way to answer it would be to obtain the complaint from the OSC itself.

Second, the OSC rejected Delgado's complaint on the ground that he failed to offer sufficient evidence that he made a disclosure protected under 5 U.S.C. § 2302(b)(8). We disagree. Delgado's disclosure of suspected wrongdoing either explicitly accused another federal employee of perjury or provided sufficient evidence to justify such a suspicion worthy of consideration by superiors. Either version would be a protected disclosure.

Third, the OSC rejected Delgado's complaint because he did not provide definitive proof that he was a victim of retaliation. We hold that, like other statutes with exhaustion provisions, the Whistleblower Protection Act requires only that a complainant fairly present his claim with enough specificity to enable the agency to investigate. The Act itself and its implementing regulations do not require a whistleblower to prove his allegations before the OSC—otherwise, what need could there be for an investigation? The Board thus erred in finding that Delgado failed to exhaust administrative reme-

dies with the OSC. We grant the petition for review and remand to the Board for further proceedings consistent with this opinion, without commenting on the ultimate merit of Delgado's underlying accusations or his claim of unlawful retaliation.

I.  *Factual and Procedural Background*

The "All-Circuit Review" provision of the Whistleblower Protection Enhancement Act took effect in December 2012. See 5 U.S.C. § 7703(b)(1)(B). It expanded judicial review from the Federal Circuit to "any court of appeals of competent jurisdiction" beginning December 2012, subject to a five-year sunset. The statute instructs us to review the record and to set aside any Board action, findings, or conclusions found to be arbitrary, capricious, an abuse of discretion, not in accordance with law, obtained without proper procedures, or unsupported by substantial evidence.  § 7703(c). The Board's conclusion that Delgado failed to exhaust his remedies before the OSC was not based on any factual findings made after an evidentiary hearing, so whether the issue is treated as jurisdictional or not, we review the conclusion *de novo*. See *Waldau v. Merit Sys. Prot. Bd.*, 19 F.3d 1395, 1398 (Fed. Cir. 1994); see also *Aviles v. Merit Sys. Prot. Bd.*, 799 F.3d 457, 461–62 (5th Cir. 2015).

A.  *Delgado's Disclosures of Alleged Wrongdoing*

This case is not Delgado's first experience with whistleblowing at ATF. In 2011 the agency settled a previous case Delgado had brought before the Board concerning events in Puerto Rico. As part of the settlement, ATF agreed to transfer him to the Chicago Field Division. Delgado contends that he has endured a hostile work environment from the start and

learned shortly after arriving that a former co-worker in Puerto Rico had tipped off a Chicago agent, Chris Labno, about the reason for his transfer. Delgado says that his fellow agents' acrimonious behavior, including one supervisor's frequent use of the word "rat" while he was in earshot, led him to complain informally soon after arriving.

Delgado's current complaint stems from an incident in January 2012, about six months after he joined ATF in Chicago. Delgado was conducting surveillance with other agents while Special Agent Labno, who was undercover, tried to buy heroin from one Robert Jefferson. Delgado watched as two other men (not Jefferson) approached Labno in his undercover vehicle and robbed him of the purchase money at gunpoint before any heroin was delivered. Delgado reports that he then saw Labno jump from the car and shoot twice in the direction of the fleeing thieves, an action he believes was "not justified and … could have placed responding agents and innocent bystanders at risk of being injured."

The armed robber was caught, but federal prosecutors concluded that he had colluded with Jefferson, the original target of the undercover operation. Both men were charged with robbing Special Agent Labno of money belonging to the United States. See 18 U.S.C. § 2114(a). At Jefferson's trial, prosecutors called as witnesses Delgado, Labno, and two other agents who had participated in the surveillance. The agents were not permitted to hear one another's testimony, but during closing arguments, Delgado learned that Labno's version of events differed significantly from that of his colleagues. Jefferson's defense lawyer outlined the discrepancies and, according to Delgado, said "something along the lines of, 'I am not saying Labno is lying but … .'" Delgado also reports that

a court security officer approached him during a break from closing arguments and criticized the agents for being unable to "get your stories straight."

Although Delgado never obtained a transcript of Labno's testimony, he learned more about its substance when he found online the district court's decision denying a motion for acquittal that Jefferson had filed. Jefferson's motion had argued that the "degree to which the testimony of the government's own witnesses completely contradicted Agent Labno … renders this portion of [his] testimony so unreliable that no reasonable jury could have relied upon it." See *United States v. Jefferson*, No. 12 CR 50, 2014 WL 222726, at *8 (N.D. Ill. Jan. 21, 2014). The district judge agreed that Labno's testimony conflicted with that of his colleagues, but she denied the motion because it was "not for the court to assess the credibility of witnesses." *Id.*

Delgado had written an incident report immediately after the shooting. Even before Jefferson's trial, he says, other agents were critical of his report. Then, shortly after Jefferson's conviction, someone left at his desk training materials on report writing, which he interpreted as dissatisfaction with his report. He also found holes that appeared to have been made with a knife in a suit he left hanging in his office. Delgado further alleges that after the trial, Labno created a presentation based on the incident to train fellow agents on the use of weapons. He included a slide labeling the United States Attorney's Office for the Northern District of Illinois "Cowards-R-US" because it did not charge all of the defendants with the charges Labno deemed appropriate.

By Delgado's account, on more than one occasion he reported all of this to his supervisors but nothing was done. On

one occasion that has been the focus of the administrative process, Delgado told two superiors, John Durastanti and Rayfield Roundtree, of Special Agent Labno's conflicting sworn testimony. Delgado says that he made clear to his superiors at least that he believed Labno might have committed perjury in his trial testimony. In at least one version submitted to the Board itself, Delgado told the Board he believed Labno did commit perjury.

Two days later, Roundtree called Delgado to his office to tell him that his own boss, the Special Agent in Charge of the Chicago Field Division, had been informed about Delgado's allegation but declined to pursue the matter because Delgado "had no proof" and "did not review the transcript of Labno's testimony." Durastanti then told Delgado not to speak to other agents about his suspicions and asked whether Delgado understood the significance of what he was saying. Delgado confirmed that he did. No investigation was begun or other action taken. Delgado believes that Labno, who had been "publicly lauded" by the Special Agent in Charge, may have received improper preferential treatment.

After disclosing his allegations against Labno, Delgado contends, he was routinely excluded from ongoing investigations by his group, threatened with a transfer, denied multiple promotions for which he was highly qualified, demoted from his position as acting group leader, removed from the Joint Terrorism Task Force, and involuntarily detailed to another city for work.

B. *Delgado's Formal Whistleblower Complaint*

Delgado then filed a formal complaint with the Office of Special Counsel invoking the Whistleblower Protection Act to

seek protection from retaliatory treatment. A critical point in this appeal is that Delgado's original complaint itself is not in the record. Delgado used the OSC's e-Filing System, which instructs whistleblowers to type information into a webform. See OSC e-Filing, File a Complaint, https://osc.gov/pages/file-complaint.aspx (last visited Jan. 26, 2018). The instructions apparently did not then inform the person filing a complaint that he or she would be unable to retrieve a copy of the complaint when it was filed in this manner, nor did they inform the person that a copy of the complaint would be needed to pursue further review before the Merit System Protection Board. (The on-line instructions now advise the complainant to save a copy of everything sent to the OSC because it may be needed in the event of an appeal, but even now they do not say that an appeal will be dismissed unless the complainant can produce a copy.)

Delgado asserts that he submitted with his formal complaint a document detailing the substance of the allegations we have recounted above, along with the court order denying Jefferson's motion for acquittal. The OSC complaint process allows for such additional documents and attachments.

The following month the OSC made a preliminary determination to close Delgado's case. It sent him a letter acknowledging his allegations of retaliation and briefly recounting the underlying factual predicate found in his formal complaint:

> In your complaint, you state that in January 2012, you participated in the surveillance of Agent Labno while he was conducting an undercover deal with a suspect. During the surveillance an incident ensued and Agent Labno discharged his weapon. You prepared a report documenting your surveillance; you later learned that

some agents were critical of you because of the contents of your report. You state that during the criminal trial of the suspect in July 2013, the defense attorney contrasted Agent Labno's testimony with Agent Marano's and your testimony. You state Special Agent in Charge (SAC), Ford, Assistant Special Agent (ASAC), Nichols, and another ASAC were also present during the closing arguments. To your knowledge, neither ATF-Internal Affairs (IA) nor any other agency was contacted concerning these discrepancies. You again reported the discrepancies between your account and Labno's to John Durastanti and Mr. Roundtree on February 4, 2014.

According to the OSC examiner, however, Delgado did not allege in his complaint "a disclosure protected by the statute" because, in the examiner's view, what Delgado had told his ATF superiors about Special Agent Labno's testimony involved merely an "accounting of events [that] may have differed," not a "violation of any law, rule, or regulation." See 5 U.S.C. § 2302(b)(8) (prohibiting federal agencies from engaging in personnel actions on account of "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes … evidences any violation of any law, rule, or regulation"). In other words, the examiner concluded *on the merits* that Delgado's disclosure was not protected by the statute. She also told Delgado he had "not demonstrated a causal connection between the disclosures you identified and the ATF's decisions" because "there is no indication that either [disclosure] resulted in any investigation, or that any official suffered adverse impact because of the report."

Delgado responded, challenging the examiner's interpretation of his complaint and insisting that he "clearly alleged … that there may have been a violation of law when SA Labno provided false testimony." But the same OSC examiner then sent a second letter conveying the agency's final decision to close his case. The examiner continued to fault Delgado for not providing sufficient evidence to demonstrate a nexus between his disclosure and the retaliatory actions he alleged were taken against him.

C. *Delgado's Appeal to the Board*

Delgado appealed that decision to the Merit Systems Protection Board, which hears many appeals brought by federal employees. See 5 U.S.C. §§ 1214(a)(3), 1221. With his appeal, Delgado tendered the two letters he received from the OSC, plus a thirteen-page, single-spaced declaration, see 28 U.S.C. § 1746, detailing his allegations. He also included a copy of the district court's order denying Jefferson's motion for a judgment of acquittal in the criminal case, which sets out in great detail the conflicts between the testimony of Labno and Delgado and the other agents. Delgado maintains that he submitted all of this same information to the OSC, but he apparently cannot prove that to the satisfaction of the Board without a copy of his original complaint to the OSC.

The same day that Delgado filed his appeal, an administrative judge issued an order stating that "the Board might dismiss the appeal for lack of jurisdiction without addressing the merits of the case" and directing Delgado to "file a statement, accompanied by evidence" listing information relevant to his complaint. Yet all of the information demanded by the administrative judge already was included in Delgado's declaration. The order further instructed that, if Delgado did not

submit a copy of his original OSC complaint along with that agency's rejection letter (the latter having been tendered already), then his "response must be in the form of an affidavit, sworn statement, or declaration under penalty of perjury."

Demonstrating what seems like considerable patience by that point, Delgado did not simply remind the administrative judge that a declaration with the requested information already was before the Board. Instead, he submitted an additional ten-page response relating again all of the requested information (and all of the factual allegations recited earlier in this opinion). Delgado also asserted that he had submitted the same information to the OSC. But unlike Delgado's initial submission to the Board, his response to the administrative judge was not sworn. Delgado also did not submit a copy of the webform complaint he had filed with the OSC, but he did include the "e-Filing" confirmation.

With this detailed information available, the administrative judge then dismissed Delgado's appeal for lack of jurisdiction. The judge concluded that Delgado had failed to prove that he exhausted his remedies with the OSC as required by 5 U.S.C. § 1214(a)(3). The judge conceded that it was "evident from the record the appellant asked the OSC to review allegations of reprisal." But, the judge continued, Delgado had not provided a copy of his OSC complaint—the one submitted by webform. Consequently, the judge said: "Nothing in the information provided indicates the appellant gave the OSC a sufficient basis to pursue an investigation which might lead to corrective action." The administrative judge apparently refused to consider the extensive information Delgado had provided. The judge instead faulted him for not including a copy of the webform he completed on the OSC's website. The judge

justified this refusal by telling Delgado that the "sufficiency of the appellant's claim to the OSC must be judged by the statements he made to the OSC, not a later characterization of his disclosures to the Board."

Delgado petitioned for review by the full Board, which denied his petition and affirmed the administrative judge's initial decision. Delgado then filed this petition for judicial review.

## II.  *Analysis*

Delgado's petition for review requires us to address three distinct aspects of the finding that he did not properly exhaust remedies before the Office of Special Counsel. The first is whether the Board properly found that Delgado's failure to submit a copy of his original complaint to the OSC was fatal to his appeal to the Board.  We conclude that the Board's finding was arbitrary and capricious. The second is whether Delgado's complaint to the OSC sufficiently claimed he made a disclosure protected under 5 U.S.C. § 2302(b)(8). We conclude that it did. The third is whether Delgado's complaint to the OSC sufficiently claimed that he had been the victim of unlawful retaliation for his protected disclosure. We find that he did, at least sufficiently to warrant investigation.

### A.  *The Exhaustion Requirement—Complaint Needed?*

The Whistleblower Protection Act instructs a whistleblower to "seek corrective action from the Special Counsel before seeking corrective action from the Board." 5 U.S.C. § 1214(a)(3). The Act itself and Board regulations do not provide any substantive explication. But the Board, applying its understanding of Federal Circuit precedents, interprets this rather unremarkable administrative exhaustion statute in a

manner unlike any we have encountered in other federal statutory schemes.

First, in determining whether a whistleblower has exhausted remedies with the OSC, the Board refuses to consider any materials that the complainant cannot *prove* were submitted to the OSC. This is so, the Board insists, because "the test of the sufficiency of an employee's charges of whistleblowing to the OSC is the statement that the employee makes in the complaint requesting corrective action … not the employee's *post hoc* characterization of those statements." See *Ellison v. Merit Sys. Prot. Bd.*, 7 F.3d 1031, 1036 (Fed. Cir. 1993); see also, e.g., *Kukoyi v. Dep't of Veterans Affairs*, 111 M.S.P.R. 404, 409 (MSPB 2009).

That explanation seems reasonable at first. But recall that the OSC instructs federal employees wishing to file a formal complaint to type allegations into a webform on the agency's website. While saving a copy of the form before submission is listed as a "best practice" elsewhere on the site (and perhaps is an obvious step for a lawyer), the agency did not even warn pro se whistleblowers that failure to do so would risk dismissal of any appeal.

Under the Board's approach, however, a whistleblower who failed to anticipate this need (or who overlooked the lukewarm suggestion added later to the website) would be in practice unable to appeal an adverse OSC decision. The Board will refuse to consider the allegations of an appellant who, like Delgado, attests to the information submitted to the OSC but lacks a copy of the complaint to corroborate his claim. See, e.g., *Abou-Hussein v. Dep't of the Navy*, No. AT-1221-11-0850-W-1 (MSPB Aug. 1, 2013) (dismissing for lack of jurisdiction and declining to consider detailed chronology appellant said

he provided OSC because he lacked "evidence to support his bare assertion" that OSC received the document); *Engler v. Dep't of the Navy*, 69 M.S.P.R. 109, 113 (MSPB 1995) (declining to accept appellant's affirmation that "Chronology of Events" attached to appeal was included in OSC complaint).

The Board has issued regulations detailing what must be included in an appeal to invoke a whistleblower's right to a hearing. See 5 C.F.R. §§ 1209.6(a)(1), 1201.24(a)(1)–(9). Nowhere do those regulations require a copy of the original complaint submitted to the OSC.

Even if the Board is correct in placing on the appellant the burden to prove exhaustion, see 5 C.F.R. § 1201.57(c)(1)—exhaustion is an affirmative defense in most other contexts, after all—this approach is not sound. Instructing a whistleblower to file a complaint via a simple webform and then dismissing a later appeal because he failed to print and retain a copy sets an arbitrary trap for unwary federal employees.

And even if we assume the complaint itself is essential, we cannot understand why the OSC does not or could not simply forward a copy to the Board from OSC records. We are not aware of other situations in federal administrative law where the contents of the record before an agency (here, the OSC) are determined by what the appealing party submits to the reviewing body rather than by simply obtaining a copy of the agency record from the agency itself. (Compare, for example, the processes for judicial review of decisions by the Commissioner of Social Security or the Board of Immigration Appeals, where the filing of a petition for judicial review prompts the agency to forward the agency record to the reviewing court.) The OSC's record should be far more reliable than even a sworn statement from an appealing party about the contents

of that record.  No doubt there are other easy solutions to this apparently fatal defect in appeals to the Board. Without a clear legal requirement for a copy of the original complaint, the Board's dismissal for failure to include a copy of the original complaint is arbitrary, capricious, and an abuse of discretion. See 5 U.S.C. § 7703(c)(1).[1]

B.  *Protected Disclosure?*

The second issue is whether Delgado claimed sufficiently to the OSC (and then to the Board) that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) of information which Delgado "reasonably believe[d] evidences – any violation of any law, rule, or regulation . . . ."

---

[1] In its petition for rehearing, the Board noted that Congress has prohibited it from directly obtaining records from OSC and prohibited OSC from releasing its records to the Board, including whistleblower complaints. It is not at all clear that the Board is correct. See 5 U.S.C. § 1212(b) (allowing federal agency to disclose record to another agency with written request or permission from person to whom record pertains). Even if the Board is correct, that would only exacerbate the "Catch-22" character of the administrative process for whistleblowers. Under this process, whistleblowers must present their OSC complaints to the Board to prove they presented identical claims to OSC, but the Board and OSC in this case provided no means for a whistleblower to do so. The petition for rehearing also argues that we have misunderstood the Board's requirements for proving administrative exhaustion by concluding that an appellant must provide a copy of the OSC complaint to the Board. In lieu of an OSC complaint, the Board asserts, an appellant may provide "any correspondence submitted to OSC, or an affidavit, sworn statement, or declaration under penalty of perjury." But Delgado did just that. He submitted a detailed, sworn declaration about the claim he presented to OSC, but the Board still found he had not exhausted administrative remedies at OSC.

Defending its conclusion that Delgado failed to exhaust before the OSC, the Board argues:

> Contrary to the petitioner's assertion, he did not allege perjury—which would be a violation of law—to his supervisors. Perjury is defined as a willful statement under oath that the person giving the testimony believes to be untrue. *See* 18 U.S.C. § 1621. Simply claiming that a difference in testimony exists does not amount to an accusation of perjury, because it does not ascribe to the person giving the testimony a willful motivation to tell a knowingly untrue statement. The petitioner's claim … left open the possibility that his coworker was merely mistaken in his testimony, which would not have been perjury, or any other violation of law.

As we read this argument, the Board takes the position that Delgado failed to make a protected disclosure to his ATF supervisors because he did not allege that Special Agent Labno had the *mens rea* necessary for a criminal perjury conviction.

With respect, we must reject that position, which signals that the Board was applying the wrong standard to Delgado's appeal. See *Drake v. White*, 543 F.3d 1377, 1382 (Fed. Cir. 2008); *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999); *Mithen v. Dep't of Veterans Affairs*, 122 M.S.P.R. 489, 500 (MSPB 2015) (plaintiff's disclosure was protected where he disclosed perceived abuse of authority; he reasonably believed federal power was improperly delegated to non-federal employee); *Linder v. Dep't of Justice*, 122 M.S.P.R. 14, 22 (MSPB 2014) (to be protected, disclosure must be "specific and detailed," not a "vague allegation of wrongdoing," but plaintiff need not correctly label the legal category of wrongdoing or be ready to

prove action was taken with unlawful intent); *Benton-Flores v. Dep't of Defense*, 121 M.S.P.R. 428, 433–34 & n.3 (MSPB 2014) (disclosure was protected where plaintiff reasonably believed information showed risks to safety and security and violations of unspecified laws, rules, or regulations); *Shannon v. Dep't of Veterans Affairs*, 121 M.S.P.R. 221, 232 (MSPB 2014) (reversing dismissal of complaint: "the test for protected status is not the truth of the matter disclosed but whether it was reasonably believed"), citing S. Rep. No. 112–155, at 8, reprinted in 2012 U.S.C.C.A.N. 589, 598 ("cornerstone" of § 2302(b)(8) is that "employee need not ultimately prove any misconduct to qualify for whistleblower protection. All that is necessary is for the employee to have a reasonable belief that the information disclosed evidences a kind of misconduct listed in section 2302(b)(8).").

To invoke the Whistleblower Protection Act's protections, a whistleblower is not required to claim knowledge that each element of a crime has been committed. The Act forbids retaliation based on any disclosure that an employee "*reasonably believes evidences*" a violation of law. 5 U.S.C. § 2302(b)(8). Delgado alleged he was retaliated against after disclosing what he reasonably believed to be evidence of his co-worker's willfully false testimony, regardless of whether he could state confidently that the co-worker in fact acted willfully.

Finally, the Board maintains that its administrative judge properly refused to consider the lengthy declaration Delgado tendered with his appeal, even though in it "he did specifically allege that he disclosed perjury by a co-worker." The Board reasoned that the document "contained no indicia of any kind that it also served as his complaint to OSC." In other

words, the Board was unwilling to accept Delgado's sworn assertion that he presented the same substantive allegations to the OSC, since he cannot prove independently that the document contained precisely the same details he submitted to the OSC. And because on appeal Delgado states candidly that he made slight corrections and updates to the original document before submitting it to the Board, the Board insists, "he has effectively conceded that he failed to meet his burden of proof regarding exhaustion."

With respect, we believe this reasoning takes bureaucratic rigidity to a dysfunctional level. Under 5 U.S.C. § 1214(a)(3), Delgado had to prove only that he "sought corrective action," not that he gave the OSC every scrap of information he possessed.

Delgado does not claim that he told his ATF supervisors that he had definitive proof that Labno committed perjury in the criminal trial. After all, there are many possible explanations for discrepancies between the testimony of different witnesses that do not involve criminal intent to lie. Honest differences in perception, memory, and viewpoint often produce differences in testimony, even as between law enforcement officers trained to observe and to testify accurately.

Nevertheless, Delgado's submission to the Board makes clear that he informed his ATF supervisors that Labno might well have committed perjury and that an investigation was called for. That is sufficient for the disclosure to be protected under 5 U.S.C. § 2302(b)(8). See, e.g., *Drake v. Agency for Int'l Development*, 543 F.3d 1377, 1382 (Fed. Cir. 2008) (plaintiff reported activities that could lead observer to conclude that

agency employees were intoxicated on duty; ALJ erred by requiring plaintiff to prove that other employees were actually intoxicated in violation of law).

C.  *Applying Exhaustion Requirement to Each Fact?*

Delgado's appeal also failed before the Board for a third reason, which was also based on an arbitrary requirement imposed by the Board's treatment of the exhaustion requirement. The Board relied on a series of Federal Circuit decisions interpreting the Whistleblower Protection Act's command to "seek corrective action from the Special Counsel" to mean that "the employee must inform the Special Counsel of the *precise ground* of his charge." E.g., *Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 526 (Fed. Cir. 1992) (emphasis added); see also *Mintzmyer v. Dep't of the Interior*, 84 F.3d 419, 422 (Fed. Cir. 1996) (affirming Board determination that employee failed to exhaust four specific claims of agency retaliation that were not included in charge to OSC); *Ellison*, 7 F.3d at 1036–37 (agreeing that Board lacked jurisdiction because petitioner failed to inform OSC that claim of reprisal was based on protected disclosure to Inspector General; employee told OSC only of unprotected agency grievance). In *Ward* itself, the court affirmed the Board's refusal to consider additional episodes of allegedly wasted funds on travel by different person that were not presented in the OSC complaint: "An allegation of a specific alleged travel impropriety—here Dr. Kamely's authorization of Dr. DeFrank's trip to Portugal—was not sufficient notice to the Special Counsel that Dr. Ward also was challenging other travel related activities of Dr. Kamely." 981 F.2d at 526.

We have no disagreement with that general point, at least as stated by our colleagues on the Federal Circuit. But as applied by the Board in Delgado's case and others, exhaustion seems to be determined separately for *each fact* an employee alleges rather than for each claim of protected disclosure or retaliation. See, e.g., *Daniels v. Dep't of Veterans Affairs*, 105 M.S.P.R. 248, 253–54 (MSPB 2007) (concluding that Board lacked jurisdiction to review agency's proposed removal of whistleblower because it occurred three weeks after OSC closed her complaint and thus was not specifically presented, even though removal was consistent with complaint, which alleged campaign of retaliation including threat of "removal of all duties"); *Reeves v. Dep't of the Army*, 101 M.S.P.R. 337, 341–42 (MSPB 2005) (dismissing for failure to exhaust soldier's claim that disclosure of gross waste of training funds resulted in poor performance evaluation because he neglected to tell OSC "the precise actions he reported" and how he "reasoned that the managers' actions constituted gross waste"). As the Board applies this framework, a whistleblower effectively forfeits reliance on any factual detail not presented first to the OSC, and if the facts the employee presents do not establish a conclusive case, there is no need for the OSC to investigate. As the Board explained in Delgado's case, it agreed with the administrative judge that "nothing [Delgado] had provided indicated that he gave OSC a sufficient basis to pursue an investigation that might lead to corrective action."

The source of this unusually stringent approach is not clear to us. The exhaustion language in the statute is simple and brief. The employee must "seek corrective action from the Special Counsel before seeking corrective action from the Board." See 5 U.S.C. § 1214(a)(3). We do not see why this di-

rective should be read to require a federal employee (who typically is not trained in the law) to present to the OSC a perfectly packaged case ready for litigation. The directive surely cannot mean that an agency whose mission is to investigate must be given upfront all the information necessary to prove a complaint.

Another recent case, *Clarke v. Department of Veterans Affairs*, illustrates this problem in practice. 121 M.S.P.R. 154, 160–68 (MSPB 2014). Clarke, a physician, filed an OSC complaint containing eight specific disclosures of wrongdoing at the Veterans Administration. The OSC responded with an email seeking "more detailed information" within 10 days. (What exactly the agency wanted is unclear.) Dr. Clarke responded with a detailed narrative, but it covered only two of the eight disclosures due to "the time constraints imposed by OSC." OSC then declined to investigate—at all.

Dr. Clarke appealed, and the Board affirmed dismissal. The Board decided that Dr. Clarke had failed to exhaust the six disclosures not included in his response to the OSC's email—over the dissent of the Vice Chairman, who thought that Dr. Clarke's initial complaint contained plenty of detail, regardless of whether the agency had later requested even more information. *Id.* at 165–68. Remarkably, however, the majority grounded its finding of failure to exhaust on the OSC's "determination that it might need further information in order to pursue an investigation," a conclusion that the Board thought should be entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Clarke*, 121 M.S.P.R. at 160 n.8.

This novel determination prompted the OSC to file its own brief as *amicus curiae* asking the Federal Circuit to overturn

the Board's conclusion that Dr. Clarke had failed to exhaust. The OSC contended that the Board had disregarded the unambiguous statutory language of the exhaustion requirement without understanding "all of the relevant factors that OSC considers in marshaling its limited resources" when deciding whether to investigate a particular complaint among the thousands it receives annually. Brief for U.S. Office of Special Counsel as Amicus Curiae Supporting Petitioner, *Clarke v. Dep't of Veterans Affairs*, 623 F. App'x 1016 (Fed. Cir. 2015).

The OSC also argued that the Board's reliance on its decision not to investigate was untenable for two reasons. First, the Whistleblower Protection Act itself forbids the Board from considering such determinations. See 5 U.S.C. §§ 1221(f), 1214(b)(2)(E). Second, Congress specified during passage of the Act "that whistleblowers who seek the OSC's help not be penalized by any OSC decision not to pursue their cases." See S. Rep. No. 100-413, at 10 (1988). Notwithstanding the agency's opposition, the Federal Circuit summarily affirmed the Board's decision that Dr. Clarke had failed to exhaust his remedies before the OSC, but it did so in a non-precedential order. *Clarke v. Dep't of Veterans Affairs*, 623 F. App'x 1016 (Fed. Cir. 2015).

As *Clarke* illustrates, the Board's stringent application of the Whistleblower Protection Act's exhaustion requirement can effectively prevent all but the savviest federal whistleblowers from receiving a hearing on the merits.[2] We think

---

[2] This view is supported by a recent report from the Government Accountability Office on the implementation of the Whistleblower Protection Enhancement Act of 2012—a comprehensive amendment to the Act intended to "clarify the breadth of disclosures that are afforded protection, expand the right to bring reprisal claims for certain protected activities,

Congress intended the exhaustion requirement simply to give the OSC and the employing agency a chance to resolve issues without litigation.

The correct approach, we conclude, is to interpret the Act's requirement more consistently with other statutory exhaustion schemes. The Federal Tort Claims Act, for example, bars suit against the United States for money damages "unless the claimant shall have first presented the claim to the appropriate Federal Agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a); see 28 C.F.R. § 14.2(a) (confirming that "claim shall be deemed … presented when a Federal agency receives from a claimant" notice of the incident and a sum certain for damages on Standard Form 95).

To satisfy that important requirement, a claimant is not required to submit evidence or to include every detail that might be necessary to prove at trial. Instead, courts construe pro se administrative complaints generously and deem exhausted any claim fairly implicit in the facts that would be clear to a legally sophisticated reader. *Buechel v. United States*, 746 F.3d 753, 760 (7th Cir. 2014); accord, e.g., *Lopez v. United States*, 823 F.3d 970, 975–76 (10th Cir. 2016); *Goodman v. United States*, 298 F.3d 1048, 1055–57 (9th Cir. 2002) (describing FTCA

---

and enhance the remedies available to federal whistleblowers." U.S. Gov't Accountability Office, Whistleblower Protection: Additional Actions Would Improve Recording and Reporting of Appeals Data (2016), at 1–2, available at http://www.gao.gov/assets/690/681269.pdf. The GAO found that, despite the WPEA's enhanced protections, the Board adjudicated on the merits only 15% of whistleblower appeals during the three years after passage of the expansion. *Id*. at 12–13. To be fair, roughly one third of appeals were either withdrawn or settled. But the data show that the Board consistently dismissed more than half of all contested appeals without a hearing. *Id*.

notice requirement as "minimal" and confirming that a "skeletal" description of the alleged harm will suffice). "All that is required is sufficient notice to enable the agency to investigate," *Palay v. United States*, 349 F.3d 418, 426 (7th Cir. 2003) (internal quotation marks omitted). A plaintiff is not prohibited from later buttressing the exhausted claim with additional details or evidence. After the claimant provides enough information to put a legally sophisticated reader on notice, it is up to the agency "to fill in the gaps, to the extent possible." *Buechel*, 746 F.3d at 761.

Perhaps even closer to the whistleblower issue is the standard used to determine whether a particular claim asserted in court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, has been exhausted before the Equal Employment Opportunity Commission. Like the Whistleblower Protection Act's exhaustion scheme, Title VII requires a plaintiff to exhaust a discrimination claim through an agency that is charged with investigating but that will not be a defendant in a later civil suit on the merits of the claim.

The Supreme Court held long ago that although Title VII requires the filing of a timely charge with the EEOC before filing suit, exhaustion is not a jurisdictional requirement and may thus be waived or subject to estoppel and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–98 (1982). The Court also has instructed that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." *Lego v. Twomey*, 404 U.S. 522, 527 (1972).[3]

---

[3] The Federal Circuit and the Board treat the exhaustion requirement in 5 U.S.C. § 1214(a)(3) as jurisdictional. E.g., *McCarthy v. Merits Systems*

With these principles in mind we have held that, because most complaints "are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). We regard "a theory raised in court to fall within the scope of an administrative complaint if it is reasonably related to the charges actually set forth in the administrative filing." *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009); accord, e.g., *Sydnor v. Fairfax County*, 681 F.3d 591, 595–96 (4th Cir. 2012); *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70–71 (2d Cir. 2006). Even a charge that is not explicit in an employee's complaint will be deemed exhausted if "the current claim reasonably could have developed from the EEOC's investigation of the charges before it," meaning that "the EEOC charge and the complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). Federal employees alleging discrimination are subject to additional preconditions within the employing agency, see 42 U.S.C.

---

*Protection Bd.*, 809 F.3d 1365, 1374–75 (Fed. Cir. 2016); *Miller v. FDIC*, 122 M.S.P.R. 3, 9 (MSPB 2014). We see nothing in the statutory language ("shall seek corrective action from the Special Counsel before seeking corrective action from the Board") mandating that conclusion, particularly in light of the Supreme Court's recent jurisprudence requiring clear signals that a rule is truly jurisdictional rather than a "case-processing rule" that need not be enforced as jurisdictional rules. See, e.g., *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). Cf. *Acha v. Dep't of Agriculture*, 841 F.3d 878, 883 n.3 (10th Cir. 2016) (explaining court's view that § 1214(a)(3) remains jurisdictional). Neither party has briefed the question, however, and we need not decide it because we conclude Delgado exhausted his claim before the OSC.

§ 2000e-16(c), but since the scope of the exhaustion requirement is the same, federal employees' complaints receive the same generous construction. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099–1100 (7th Cir. 2013). We see no statutory or other reason it should be substantially more difficult for a federal employee to exhaust a claim of retaliation under the Whistleblower Protection Act than a charge of discrimination under Title VII.

The OSC examiner also faulted Delgado for not providing evidence showing "a causal connection between the disclosures you identified and the ATF's decisions" because "there is no indication that either [disclosure] resulted in any investigation, or that any official suffered adverse impact because of the report." This conclusion seems to have been worded as if Delgado were required to allege that Labno suffered adverse impact. That could not be correct. The issue is retaliation against the alleged whistleblower, not against the target of his disclosures. "Congress passed the whistleblower statute precisely because it did not trust agencies to regulate whistleblowers within their ranks." *Dep't of Homeland Security v. MacLean*, 135 S. Ct. 913, 920 (2015).

The pertinent inquiry is of course whether Delgado himself suffered adverse action as a result of his disclosures of Labno's possible perjury and reckless firing of his weapon. Delgado's complaint specifies adverse actions he suffered because of his disclosures, including denied promotions, a threat of an unwelcome transfer, and a hostile work environment. Neither OSC nor the Board has identified any particular problem with Delgado's allegations on this score. He provided enough specifics for the OSC to investigate if it had chosen to do so, including identifying specific adverse actions

and specific responsible supervisors. Delgado's complaint does not prove that the relevant decisions were motivated by a desire to retaliate against him for his disclosures, but he needed only to provide a sufficient basis for investigation. He did so.

It is undisputed that Delgado gave the OSC a copy of the district court's order denying Jefferson's motion for a judgment of acquittal. When the OSC's initial letter is read in conjunction with the court's order, it is clear that the OSC understood that Delgado claimed he suffered retaliation after telling superiors he suspected that Special Agent Labno had lied at Jefferson's trial. Indeed, the OSC's letter by itself includes enough information to know Delgado had tried to "seek corrective action" from OSC, as required by the statute. Delgado even responded to that first letter, challenging the OSC examiner's understanding of his complaint and insisting that he "clearly alleged … that there may have been a violation of law when SA Labno provided false testimony." Everything else submitted by Delgado in this case—his declaration to the Board, his response to the administrative judge's demand for information to establish the Board's jurisdiction, and even his brief in this court—is consistent with the OSC's stated understanding of Delgado's complaint.

We hold that Delgado satisfied the Whistleblower Protection Act's exhaustion requirement by presenting the OSC with sufficient information to permit a legally sophisticated reader to understand his charge of retaliation and to investigate it further. The absence of a copy of his initial complaint should not prove fatal before the Board, at least if other sufficiently reliable evidence demonstrates exhaustion, such as the OSC's response letters, an affidavit or declaration attesting to the

complaint's substance, or a copy of Delgado's complaint itself from the OSC's own files.

The petition for review is GRANTED, and the case is REMANDED to the Board for further proceedings consistent with this opinion.