Rovner, Circuit Judge, dissenting.
Our circuit applies a flexible standard to the exhaustion requirements for plaintiffs making claims under the Federal Tort Claims Act, excusing technical deficiencies so as not to preclude all but the savviest of plaintiffs from receiving a hearing on the merits. See Delgado v. Merit Sys. Prot. Bd. , 880 F.3d 913, 924 (7th Cir. 2018), as amended on denial of reh'g and reh'g en banc (June 19, 2018). The majority's decision demands far more of Chronis than our precedent requires.
Chronis, a pro se plaintiff, knew little about the complicated legal world of suing the federal government. She was simply looking for a solution to her problem. She alleged that she had been harmed during a medical appointment at a health center that receives federal funds. She looked for a solution by repeatedly telephoning the doctor whom she alleged harmed her, but that doctor did not help, and indeed did not return any of her numerous calls. (R. 10 at 24, 45, 57). She made calls to employees at the health center that employed the doctor, but they would not help. Id. She made several written complaints to the health center's grievance committee, but it would not help. (R. 10 at 22, 45-47, 53-55, 56-59). She filed an appeal with the Illinois Department of Healthcare and Family Services, but it did not help. (R. 10 at 27-28). She mailed a submission to the Centers for Medicare and Medicaid Services (CMS), a federal administrator of the Medicaid Program, but it simply referred her to the Illinois Department of Financial and Professional Regulation. (R. 10 at 6). She filed a professional regulation complaint with the Illinois Department of Financial and Professional Regulation, but there is no record of any response. (R. 10 at 26). She filed a malpractice claim in state court, but the United States told her that was the wrong place too, and removed the case to federal court. And then, finally, the federal court told Chronis that, after all those calls, steps, letters, claims, and complaints, she had not given the government notice in the proper manner and it too would not help.
Chronis' odyssey is reminiscent of the famous children's book by P.D. Eastman. In that book, a baby bird, having fallen out of the nest, is looking for a solution to its problem. Having just hatched, the baby bird knows little about the world, and thus asks for help in all the wrong places-asking a kitten, a hen, a dog, a cow, a boat, and an airplane, "Are you my mother?" Each answers indignantly that the baby bird has come to the wrong place for a solution. The last place the baby bird looks for a solution is with the powerful steam shovel. The steam shovel, knowing the rules and how to get things done, gently places the baby bird back into the nest. Unfortunately for Chronis, the steam shovel in her case just kept rolling along.
The Federal Tort Claims Act requires a plaintiff to exhaust her administrative remedies and give notice to the government of her claim so that the agency can have a chance to settle "meritorious claims more quickly and without litigation." Warrum v. United States , 427 F.3d 1048, 1050 (7th Cir. 2005) ; 28 U.S.C. § 2675(a). But we have long applied a flexible standard and have made clear that technical deficiencies in an administrative claim are not fatal, provided the "proper agency had the opportunity *551 to settle the claim for money damages before the point of suit." Smoke Shop, LLC v. United States , 761 F.3d 779, 787 (7th Cir. 2014). Our flexible standard means that courts must construe pro se administrative complaints generously and deem exhausted any claim fairly implicit in the facts that would be clear to a legally sophisticated reader. Delgado , 880 F.3d at 925. Accordingly, a plaintiff may "litigate under the FTCA following an administrative demand" even if that initial administrative demand "does not comply with every jot and tittle of the rules defining a 'claim.' " Kanar v. United States , 118 F.3d 527, 530 (7th Cir. 1997). "Why," we asked, "should courts stand on punctilious adherence to unimportant elements of the regulatory definition of a 'claim' under the FTCA?" Id. at 531. Instead, we look to see whether the noncompliance has "hinder[ed] the settlement process that a claim is supposed to initiate;" if it has not, then there is no reason to foreclose litigation. Id .
And yet the majority appears to be requiring the "punctilious adherence" that our precedent rejects. Our cases make clear that a potential plaintiff's claim needs to meet two requirements: she must specify the facts behind the claim, and make a demand for money. That is it. Khan v. United States , 808 F.3d 1169, 1172-73 (7th Cir. 2015).[1] The administrative regulation states that the claim must be one for "money damages in a sum certain." 28 C.F.R. § 14.2(a). But our court has held that the "sum certain" requirement is more bark than bite. We have declared unquestionably that "[f]ailure to specify a 'sum certain' is not fatal." Id. at 1172.[2] ,[3] In other words, the target is large and if the federal agency (which we presume to be legally sophisticated), sees the dart land anywhere on it, it has the chance to engage in the settlement process, and it has received a claim.
No one disputes that Chronis notified the agency of the incident, and with good reason. In her November 7, 2015 submission to CMS, she described her "horrible" visit to the gynecologist, Dr. Alexander, that resulted in an alleged injury "that resulted from [Dr. Alexander's] malpractice and gross negligence." R. 10 at 41. She also enclosed her correspondence with the health center in which she detailed her injuries and her intent to pursue a claim.[4]
*552 The majority's decision hangs on its conclusion that Chronis did not make a proper claim for money damages to CMS. Chronis' letter to CMS, however, on the very first page asks for four things in a numbered list set out in its own paragraph, one of which (number 3) is "receiving restitution." R. 10 at 41. The word "restitution" is common parlance for recompense for injury or loss. The OED defines it as "making reparation to a person for loss or injury previously inflicted."[5] Chronis' request for restitution was coupled with other money-demanding language. She stated that she was injured and had to "pay out of pocket" due to the doctor's "malpractice and gross negligence"-legal terms one uses when a person believes she has a claim against a tortfeasor. Id. The letter is speckled with all manner of references to money damages: The malpractice "is costing me money," she wrote to CMS. Id. She later wrote of Dr. Alexander's liability for malpractice. Id. at 43. To state that a request for restitution along with talk of out-of-pocket loss, malpractice, and liability is not a money demand defies credulity, and resembles the "punctilious adherence" that this court has rejected. See Kanar , 118 F.3d at 530-31.
It is true that what Chronis stated in her letter to CMS was "I request your assistance in ... receiving restitution," rather than stating "I want restitution from you, CMS." See R. 10 at 41. The latter would have been more clear, for certain, but there is no legally relevant difference, particularly in a legal posture in which we are required to "deem exhausted any claim fairly implicit in the facts that would be clear to a legally sophisticated reader." Delgado , 880 F.3d at 925. Chronis wanted restitution. She wanted CMS to help her get it. As far as she was concerned, CMS could do so either by pulling it out of its own pockets, if it was the responsible party, or helping her find the proper pocket, if it was not. The fact that Chronis was having trouble figuring out who the correct responsible party was, is not surprising. As the majority points out, "even an experienced medical malpractice lawyer" might not always be aware that a particular health center and its doctors "would be treated as Public Health Service employees covered by the Federal Tort Claims Act." Majority Op. at 549. CMS, however, is the legally sophisticated, powerful steam shovel in this scenario. It knows that the federal government is the party responsible when someone files a malpractice claim against a federally funded community health center. In fact, based on this knowledge, after Chronis sued the health center in state court, the United States came forward and identified itself as the responsible party, substituted itself as the sole defendant, and removed the case to federal court. Chronis, on the other hand, is unfamiliar with the world of federal tort litigation. She had no way of knowing from where exactly the restitution should come, but she knew that she wanted the responsible party to provide it. This is why our case law is so solicitous of pro se plaintiffs facing sophisticated federal agencies. All that is required is enough to clue in the agency that the claimant has been injured and wants recompense. See Palay v. United States , 349 F.3d 418, 426 (7th Cir. 2003) ("All that is required is *553 sufficient notice to enable the agency to investigate the claim."); see also Buechel v. United States , 746 F.3d 753, 760 (7th Cir. 2014) (elucidating the liberal standard for claims under the Federal Tort Claims Act). We expect federal agencies to be legally sophisticated and take the minimal information provided to them and investigate. Palay , 349 F.3d at 426.
The request for money damages should have been clear from the language of the letter itself-the request for restitution coupled with claims of malpractice and notice about out-of-pocket expenses. But that is not all Chronis did. She also notified CMS that she had "enclosed all relevant, previous correspondence between UIC Health, and myself." R. 10 at 43. Attachments to her Federal Tort Claims Act claim become part of that claim. See, e.g., Palay , 349 F.3d at 426 (noting that the plaintiff "attached to his Form 95 the letter from his attorney, and in so doing made that letter a part of his Form.") The correspondence Chronis attached included her August 25 complaint to the health center's grievance committee in which she requested reimbursement of $332 for out-of-pocket costs, and referenced her right to "retain an attorney." R. 10 at 57, 59. In the letter she spoke of being out of pocket for medical fees, gas money, parking fees, and records fees "which I would like reimbursed." Id. at 57. She also made requests for money damages in other attachments. For example, in another letter attached to the submission to CMS-this one to the health center dated November 2, 2015-she stated that because she "paid out of pocket [ ] for physical damage and medical care caused by your malpracticing physician, you owe me [ ] the reimbursement, as the doctor has already been paid." R. 10 at 45. She also stated, "your doctor's willful negligent [sic] and malpractice ... makes you liable for reimbursement to me, personally for the out of pocket costs that I have incurred from your employee's actions." Id. at 46. Even if the letter to CMS itself did not make a complete money demand (and I believe it did), the letter put CMS on notice that Chronis was seeking money and explicitly pointed to the attached documents for the details, including the sum certain.
The majority asserts that we must not force agencies to search for claims buried within lengthy attachments. For this proposition, it cites Deloria v. Veterans Admin. , 927 F.2d 1009, 1012 (7th Cir. 1991). We must reconcile this precedent, however, with a more recent one in which we explicitly stated that attachments to a Federal Tort Claims Act claim become part of that claim. Palay , 349 F.3d at 426 (citing Murrey v. United States , 73 F.3d 1448, 1452-53 (1996) ). The facts in Deloria , however, are so far removed from the present case to make that precedent of no use here. In Deloria , the plaintiff's claim form asserted that Veterans Administration employees conspired to alter his medical records to deny him benefits, but later he filed suit in district court alleging malpractice and negligence by VA doctors. We rejected the malpractice and negligence claims as not properly presented to the agency. Deloria claimed that the sixty-three page attachment to his administrative claim for conspiracy to deprive him of benefits, if read closely, "foreshadowed" his current malpractice and negligence allegations. Id. at 1012. We decided, however, that any "faint intimations of Deloria's additional claims" that might be gleaned from his sixty-three page appendix did not constitute "the type of fair notice that Congress envisioned when it fashioned the presentment requirement." Id. Deloria's claims, if they were made at all (and the court thought they were only barely hinted at in the attachments), were buried deep within his attachments and not made at all *554 on the face of his claim. Chronis, in contrast, is not asking the court to tease out a buried glint of a foreshadowed claim from her attachments; far from that. She squarely asserted a claim for "restitution" on the face of the claim itself, and pointed to the attachments only to reveal an actual dollar amount of damages-the absence of which, we have held, would not have been fatal to her claim in any event. This makes her case more similar to Palay's who asserted a claim on the face of the submitted documents and pointed to the attachments for details.
The majority concedes that Chronis made a demand for a sum certain to the health center, but denies that she made such a demand to CMS. But of course the federal agency knew that any claim made against a federally supported health center is a claim against the federal government. See Majority Op. at 545, n.1. That is why the federal government moved to substitute itself in the litigation against the health center and remove the matter to federal court. The fact that the federal government was on the hook for malpractice claims alleged against the health center was information that was in the hands of the agency-an agency that had a duty to investigate Chronis' claim. "After the claimant provides enough information to put a legally sophisticated reader on notice, it is up to the agency 'to fill in the gaps, to the extent possible.' " Delgado , 880 F.3d at 925 (citing Buechel , 746 F.3d at 761.)
The majority states that "Chronis wanted something other than money from CMS ... she wanted 'guidance on how to proceed.' " Majority Op. at 548. It would be more accurate to say that she wanted something more than just money from CMS. We do not disagree that she wanted guidance, but she wanted guidance about how to proceed in order to receive the restitution that was listed as one of four enumerated solutions she requested on the front page of her letter. See R. 10 at 41. Guidance alone would not make her whole or pay the medical bills. The guidance was needed in order to recover for her loss. And when a person wants payment for medical malpractice from a designated federally-funded health center, the legally sophisticated reader (which we assume the agency to be) knows that payment must come from the federal government's coffers.
There is a reason we construe legal pleadings by pro se plaintiffs liberally. See Erickson v. Pardus , 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Our court has long been "cognizant of the unique challenges facing pro se litigants." Anderson v. Hardman , 241 F.3d 544, 545 (7th Cir. 2001). Chronis claimed damages of $332. The fact that she needed reimbursement for the $332 medical and miscellaneous fees suggests that she could not afford to hire a lawyer to recover the sum. Clearly the $332 was a significant sum to Chronis, but few, if any lawyers would take a civil action to recover $332. Chronis had no choice but to seek a remedy on her own. And she is not alone. Few people can afford to pay an attorney for the amount of time it would take to recover such a small sum of money. And, as this case demonstrates all too well, modern litigation contains so many traps and barriers that it is near to impossible for non-lawyers to successfully navigate it. Despite Chronis' valiant and persistent efforts, the majority finds that she failed to say the magic words in the correct format and in the correct place, and therefore the sophisticated steam shovel rolled right over her, as it will other injured pro se plaintiffs who cannot afford to hire lawyers to recover small sums.
*555 The majority says that all is not lost for Chronis, as there remains some possibility that she could squeeze her claim down another path-re-asserting her claim and relying on the Westfall Act to save any statute of limitations problems or by hoping for equitable tolling. Majority Op. at 549. The Westfall Act tolling provision applies only in very narrow conditions: it applies only if "the claim would have been timely had it been filed on the date the underlying civil action was commenced, and [ ] the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action." 28 U.S.C.A. § 2679. And, of course, equitable tolling is reserved only for the rarest of instances in which a plaintiff can demonstrate some "extraordinary circumstances" beyond her control. Blanche v. United States , 811 F.3d 953, 962 (7th Cir. 2016).
We must remind ourselves that a key point of this case is that Chronis is a pro se plaintiff. Therefore the ordinary lenience we give Federal Tort Claim Act claims is magnified all the more. Chronis was unrepresented throughout the administrative process, through removal from state to federal district court, and in this court as well. (We requested and received the capable and helpful assistance of amicus curiae, Travis S. Andrews, for which we are extremely grateful. Chronis, however, still does not have retained counsel and is unlikely to find it for her $332 claim). Chronis struggled to file a simple valid Federal Tort Claims Act claim. The odds of her successfully navigating these more complex alternative pathways that the majority suggests are slim, at best.
Chronis wrote, called, filled out complaint forms, and wrote again. She attached exhibits, correspondence, forms, and e-mail. According to the government, and now the majority opinion, however, this was not enough: Chronis did not ask in the proper way.[6] She did not state that she sought "money damages" in a sum certain. Instead, she said "I request your assistance ... in receiving the restitution." And the amount of that restitution that she sought was not in the letter itself, but in an attachment to the letter. The majority is requiring stricter adherence to the requirements than our law requires and we must be careful not to block access to relief for pro se plaintiffs. See Kanar , 118 F.3d at 530-31. But if Chronis cannot jump through the proper hoops with her multi-page, well-documented, persistent, and multiple requests to myriad agencies, what pro se plaintiff would ever succeed? See, e.g., Delgado , 880 F.3d at 924 (stringent application of a statute's "exhaustion requirement can effectively prevent all but the savviest [plaintiffs] from receiving a hearing on the merits.").
The majority's decision has altered the requirements for plaintiffs making a claim pursuant to the Federal Tort Claims Act. No longer will we apply a flexible standard and overlook technical deficiencies; no longer will we construe pro se administrative complaints generously and "deem exhausted any claim fairly implicit in the facts that would be clear to a legally sophisticated reader." Delgado , 880 F.3d at 925. We now require "punctilious adherence" to every "jot and tittle" of the rules defining a claim. I respectfully dissent.

We have also noted that a potential plaintiff must include a title or capacity of the person signing and evidence of the person's authority to represent the claimant (Kanar , 118 F.3d at 528 ), but these more administrative elements are not at issue in this case.

As we have noted, our cases law requires that we construe pro se administrative complaints generously and deem exhausted any claim fairly implicit in the facts that would be clear to a legally sophisticated reader. Delgado , 880 F.3d at 925. At least five other circuits are more generous than this circuit in how they interpret the minimal notice requirements for a claim. See Kanar , 118 F.3d at 529 (citing cases). We have also noted that requiring a "sum certain" is an oddity of this administrative scheme as "it is not part of a claim for relief in judicial practice." Id. (citing Fed. R. Civ. P. 8 ).

The government asserts that our case law concluding that the lack of a sum certain is not fatal to a claim is incorrect. That is a matter it may take up with the Supreme Court. For now, our case law, with which the majority agrees, stands.

This is a good place to stop and address the elephant in the room. Chronis' allegations might, at times, appear unreasonable to judges who are used to the more staid, logic-driven arguments of lawyers, as opposed to the emotional and personal claims of pro se plaintiffs. Just as in summary judgment, however, we are at a threshold moment where the only question is whether Chronis may proceed with her claim. Cf. Payne v. Pauley , 337 F.3d 767, 770 (7th Cir. 2003) (a court's job is to suspend credibility determinations when looking at threshold matters). Whether her claim leads to a ruling in her favor is for another day. Id. Instead, we must suspend judgment of the veracity of the claims and decide only whether Chronis gave the government the minimal notice required by the Federal Tort Claims Act.

OED Online, Oxford University Press, June 2019, www.oed.com/view/Entry/163966. Accessed 2 July 2019.

According to the majority it was both too little and too much, as the claim was "buried within, as many as sixty pages of attachments." Majority Op. at 546. In other words, Chronis failed to make a claim because she provided too much information to CMS.