In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2239

ADAM DELGADO,

*Petitioner*,

*v.*

UNITED STATES DEPARTMENT OF JUSTICE,
Bureau of Alcohol, Tobacco, Firearms, and Explosives,

*Respondent*.

Petition for Review from the Merit Systems Protection Board in
Docket No. CH-1221-14-0737-M-1
Docket No. CH-1221-18-0149-W-2

ARGUED APRIL 7, 2020 — DECIDED JULY 16, 2020

AMENDED ON PETITION FOR REHEARING, OCTOBER 29, 2020

Before ROVNER and HAMILTON, *Circuit Judges*.[*]

---

[*] Then-Circuit Judge Barrett was a member of the original panel but did not participate in consideration of the petition for rehearing, which is being decided by a quorum of the panel under 28 U.S.C. § 46(d).

HAMILTON, *Circuit Judge*. Petitioner Adam Delgado is a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Since 2014, he has sought relief under the federal Whistleblower Protection Act for retaliation he believes he suffered after reporting his suspicions that another ATF agent may have committed perjury during a federal criminal trial. See 5 U.S.C. §§ 1214(a)(1)(A), 2302(b)(8).

This is Delgado's second trip to this court. Two years ago, we held that the Merit Systems Protection Board had acted arbitrarily and capriciously in dismissing his administrative appeal under the Act. *Delgado v. Merit Systems Protection Bd.*, 880 F.3d 913 (7th Cir. 2018) ("*Delgado I*"). We held that Delgado had properly alleged "a protected disclosure" and had exhausted his administrative remedies so that the Board had jurisdiction to evaluate the merits of his claim. See *id.* at 916, 920. We remanded the case to the Board for further proceedings consistent with our opinion.

On remand, the Board denied relief. (The Board acted only through an Administrative Judge; since early 2017 the Board itself has lacked a quorum.) Delgado again seeks judicial review. Again, we must find the Board has acted arbitrarily, capriciously, and contrary to law. The Administrative Judge (or AJ) paid only lip-service to our decision, ignoring critical holdings and reasoning. Delgado proved that he made a disclosure that was in fact protected under the Act. He also proved retaliation for his protected disclosure, which affected decisions to deny him several promotions. "After concluding that an administrative decision is flawed, a court of appeals normally must remand to the agency." *Baez-Sanchez v. Barr*, 947 F.3d 1033, 1036 (7th Cir. 2020), citing *Negusie v. Holder*, 555 U.S. 511 (2009), *Gonzales v. Thomas*, 547 U.S. 183 (2006), and

*INS v. Orlando Ventura*, 537 U.S. 12 (2002). As in *Baez-Sanchez*, however, "we have already remanded, only to be met by obduracy." *Id.*

We remand once more, but only on the extent of relief for Delgado. The government had the opportunity to offer evidence to support its affirmative defense, that it would have made the same decisions anyway. The government's showing on its defense fails as a matter of law, at least as to one March 2014 promotion denial and another in 2016 where Delgado was the only candidate on the "best qualified" list. Delgado is entitled at least to pay and benefits as if he had been promoted to GS-14 effective March 4, 2014. Possible further relief will need to be considered on remand.

I.   *The Whistleblower Protection Act*

We first provide an overview of the Whistleblower Protection Act and how it frames the issues on this petition for judicial review. Covering most federal civil servants, the Act offers relief for employees who have suffered adverse personnel actions as a result of making protected disclosures of wrongdoing within their agencies. See 5 U.S.C. § 2302(a)(2)(B) and (b)(8). The disclosure at issue in this appeal falls under § 2302(b)(8)(A)(i), which protects "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences any violation of any law, rule, or regulation … ."

The Act establishes a procedural obstacle course for employees who invoke its protections. A covered employee who believes he has suffered a prohibited personnel practice under the Act must first "seek corrective action from the Special

Counsel before seeking corrective action from the [Merit Systems Protection] Board." § 1214(a)(3). The Special Counsel must investigate any allegation received "to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." § 1214(a)(1)(A). If the Special Counsel "determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken which requires corrective action, the Special Counsel shall report the determination together with any findings or recommendations to the [Merit Systems Protection] Board, the agency involved and to the Office of Personnel Management, and may report such determination, findings and recommendations to the President." § 1214(b)(2)(B).

After the Office of Special Counsel has finished with the case, an employee may seek corrective action from the Merit Systems Protection Board. § 1221(a). The Board must order appropriate corrective action if the employee demonstrates that a protected disclosure "was a contributing factor in the personnel action which was taken or is to be taken against such employee … ." § 1221(e)(1). The employee may do so by means of "circumstantial evidence, such as evidence that— (A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." *Id.* (This "knowledge/timing test" plays a key role in this case. See, e.g., *Powers v. Dep't of the Navy*, 97 M.S.P.R. 554, 561 (2004); *Grubb v. Dep't of the Interior*, 96 M.S.P.R. 377, 395 (2004); *Redschlag v. Dep't of the Army*, 89 M.S.P.R. 589, 634–35 (2001).) If the employee shows that a protected disclosure was a contributing

factor in the personnel action, the agency may still avoid relief to the whistleblower by "demonstrat[ing] by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2).[1]

These statutes frame four key issues here. First, did Delgado properly exhaust remedies available with the Office of Special Counsel? We held in *Delgado I* that he did. 880 F.3d at 920–21. The Administrative Judge was not happy with that holding, but because she did not base her new decisions on this issue, we say no more about it.

Second, did Delgado make a protected disclosure within the meaning of the statute? We held in *Delgado I* that he alleged a protected disclosure in 2014, *id.* at 921–22, and the evidence at the hearing shows that he in fact made a protected disclosure. We explained that the AJ and Board had applied the wrong standard in their original decision. *Id.* Our same reasoning applies to Delgado's later disclosures on the same subject in 2015 and 2016. To our amazement, though, after our remand the AJ rejected our reasoning and holding and found, for the second time, that none of Delgado's disclosures were protected. Her theory was that Delgado had not reported an objectively reasonable belief of wrongdoing because his account did not foreclose the possibility of an innocent explanation for the differences in testimony, and the circumstances were such that his colleague Chris Labno had probably been

---

[1] The procedural obstacle course also includes a number of deadly pitfalls, at least as the statutes are interpreted and applied by the administering agencies. See generally *Delgado I*, 880 F.3d at 920–21, 923–27 (describing procedural rules and precedents used to reject Delgado's original complaint and appeal).

telling the truth. That was arbitrary, capricious, and contrary to law.

Third, did Delgado demonstrate that his disclosure was a contributing factor in his failure to be promoted on numerous occasions? The AJ found on remand that he did, at least for two promotions denied in 2014. And fourth, has the agency shown by clear and convincing evidence that it would not have promoted Delgado regardless of these disclosures? The AJ took evidence on this question but did not answer it. We find that the agency had the opportunity to make its case and failed to do so; there is no need for a further hearing on it.

II. *Delgado's Protected Disclosures*

The first contested issue is whether Delgado made a protected disclosure. We held in *Delgado I* that he had properly *alleged* a protected disclosure in his filings with the Office of Special Counsel and before the Board. Delgado alleged that he met with two supervisors on February 4, 2014 and reported to them his belief that a fellow agent (Labno) had committed perjury in a federal criminal trial where Delgado, Labno, and other agents had testified. The testimony concerned an attempted undercover drug buy in which Labno was robbed by the suspected drug dealers. Labno fired shots at the fleeing robbers, and whether his shots were justified was disputed in the trial of one suspected (then convicted) dealer. The Administrative Judge and Board had held that Delgado had not alleged a protected disclosure because he had not told his supervisors that he definitely believed Labno had acted with the mens rea necessary for perjury, and his disclosure left open the possibility that Labno had been honestly mistaken on some key details in his testimony relevant to whether the shooting was justified. 880 F.3d at 921.

As we explained in *Delgado I*, the relevant language of the Act does not require a disclosure to assert a violation of law as definitively as the Board had required of Delgado. The Act protects a disclosure that the employee "reasonably believes evidences" a violation of the law. 5 U.S.C. § 2302(b)(8). Our decision squarely rejected the Board's rationale for finding that Delgado's disclosure was not protected. Under paragraph (b)(8), a whistleblower need not assert that he has definitive proof of a violation of law, such that he is confident that all innocent explanations can be refuted. 880 F.3d at 922.

Under the federal Act, whistleblowers are protected even if their disclosures fall short of a complete investigative report that leaves no room for disagreement or rebuttal. They are protected even if a more complete investigation or hearing ultimately shows that their suspicions were not correct. The Act leaves federal managers and supervisors with the power and responsibility to choose whether to investigate and ultimately to decide whether reported suspicions were correct. What the Act prohibits is retaliation—punishment—for employees who speak up about their reasonable suspicions of wrongdoing.

After all, managers in federal agencies are supposed to react to and investigate relevant information about their agencies even if—especially if—important facts are not yet known. The Office of Special Counsel itself is supposed to be in the business of conducting investigations. It should not merely wait for intrepid employees to conduct their own investigations, to prepare complete and definitive investigative reports, delivered to the Office tied up in ribbons. In *Delgado I*, we concluded: "Delgado's submission to the Board makes clear that he informed his ATF supervisors that Labno might

well have committed perjury and that an investigation was called for. That is sufficient for the disclosure to be protected under 5 U.S.C. § 2302(b)(8)." 880 F.3d at 922–23; accord, e.g., *Drake v. Agency for International Development*, 543 F.3d 1377, 1382 (Fed. Cir. 2008) (reversing Board's finding that employee's disclosure was not protected because it did not definitively show violation of law).

In holding that, contrary to the Board's view, Delgado had sufficiently alleged a protected disclosure in his administrative filings, we did not and could not find that he had proven it. That was a question for the evidentiary hearing after our remand. One can imagine, after all, that the ATF supervisors might have testified credibly that Delgado made no such disclosure. That is not what happened. Delgado's supervisors agreed in substance with his account of his disclosure. They took his report seriously enough that they relayed it to the ATF's Special Agent in Charge in Chicago and to the United States Attorney's Office. There was no factual dispute material to whether his February 4, 2014 disclosure was protected.

One would think, therefore, that the question of protected disclosure would not have been difficult on remand. To our amazement, however, the Administrative Judge ignored our analysis and decision on this issue in *Delgado I*. She repeated at considerable length her earlier analysis, which the Board had adopted and which we had reversed, asserting that the disclosure was not protected because Delgado had not claimed definitively that Labno had committed perjury. She also conducted a detailed (but oddly mistaken) evaluation of the details of the unsuccessful controlled buy in Chicago and the shooting to decide whether Labno had actually committed perjury or whether the discrepancies between his testimony

and other agents' were more likely the result of honest differences in memory and perspective. See Short App. 44–48. (We say oddly mistaken because the AJ said *four times* in her opinion that the events occurred at night, a fact she used to discount Delgado's observations and to add to the risk of honest mistakes. Everyone else agrees that the events occurred in the middle of the day.) The Administrative Judge's treatment of this issue was an obvious, unexplained, and astonishing example of administrative obduracy.

Under the Act itself, and under our decision in *Delgado I*, the role of the Administrative Judge was not to decide years after the event whether she was dealing with perjury or honest mistakes. The possibility of honest mistakes was well known to everyone involved. They were all experienced law enforcement officers, and the difference between deliberate lies and honest mistakes is always an issue when perjury is possible. That possibility did not bar protection for Delgado's report. (And for what it's worth, Delgado had a clear view of the relevant events, in broad daylight, and Labno's version of events was contradicted by other agents as well as by Delgado, and served to justify Labno's shooting of his firearm in controversial circumstances. The facts known to Delgado did not definitively prove perjury, but they provided reasonable evidence to believe that it occurred and that further investigation would have been warranted.)

In finding that Delgado's disclosure was not protected, the Administrative Judge also relied in part on the fact that there had been a history of friction between Delgado and Labno, and she wrote that the Whistleblower Protection Act was not intended as a vehicle for resolving such conflicts. That portion

of the AJ's decision reflected another legal error. The Act provides specifically: "A disclosure shall not be excluded from subsection (b)(8) because of the employee's or applicant's motive for making the disclosure." 5 U.S.C. § 2302(f)(1)(C). Again, the central issue under the Act is not the motive for a disclosure or friction between employees, but whether managers retaliated against an employee for making a protected disclosure.

In *Baez-Sanchez v. Barr*, we summarized the basic rules here: Under the rule of law, an agency that is unhappy with a court's decision on judicial review may appeal further or perhaps seek legislation to change the applicable law for future cases. The agency may not pretend the court did not make its decision. See 947 F.3d at 1036.

In more doctrinal terms, the agency here disregarded the law of the case, which "prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014), quoting *United States v. Polland*, 56 F.3d 776, 779 (7th Cir. 1995). The law-of-the-case doctrine applies to judicial review of administrative decisions. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998), citing *Chicago & Nw. Transp. Co. v. United States*, 574 F.2d 926, 929–30 (7th Cir. 1978), citing in turn *Morand Bros. Beverage Co. v. NLRB*, 204 F.2d 529, 532–33 (7th Cir. 1953). The law-of-the-case doctrine is a corollary of the mandate rule, which "requires a lower court"—here, an administrative tribunal—"to adhere to the commands of a higher court on remand." *Adams*, 746 F.3d at 744; accord, *Baez-Sanchez*, 947 F.3d at 1036.

The law-of-the-case doctrine and mandate rule are not inflexible. They may bend in "sufficiently compelling circumstances," such as "subsequent factual discoveries or changes in the law." *Carmody v. Bd. of Trustees*, 893 F.3d 397, 407–08 (7th Cir. 2018), citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). The Administrative Judge did not, however, rely on any new evidence or intervening changes in law. Instead, she repeated her earlier and erroneous analysis, as if we had not ruled. We did not remand so that the AJ could flout our order. Delgado's February 4, 2014 disclosure that he suspected perjury by Labno was a protected disclosure under § 2302(b)(8).

We must note here a procedural complication. The AJ actually decided not one but two cases involving Delgado, which the parties call the 2014 Case and the 2018 Case. The 2014 Case is the same one that we remanded before, stemming from Delgado's 2014 complaint to the Office of Special Counsel. While his first petition for judicial review was pending, Delgado filed a new complaint with the Office of Special Counsel that has become the 2018 Case. In the 2018 Case, Delgado asserted that he had been retaliated against again when he was denied promotions he sought in 2016. The AJ issued separate written decisions on the two cases on successive days, and Delgado's current petition for judicial review challenges both.

The treatment of the protected disclosure issue was not any better with Delgado's 2018 Case. The Administrative Judge's separate order on the 2018 Case repeated her adherence to the reasoning we had reversed in *Delgado I*. She held that Delgado had made no protected disclosure. The AJ re-

fused to follow the law of the case, making her 2018 Case decision arbitrary, capricious, and contrary to law for the reasons that also apply to the 2014 Case.

There are a couple of additional wrinkles to the 2018 Case. The Administrative Judge focused on Delgado's email on November 13, 2016 to Attorney General Lynch, the Office of Inspector General, and several members of Congress. Delgado sent that email after the key alleged acts of retaliation he alleged: denial of promotions for which Delgado interviewed in August and October 2016. The AJ found that the timing prevented this later disclosure from being a protected disclosure under the statute. Short App. 38.

That reliance on sequence is usually reasonable in evaluating retaliation claims. The problem here is that Administrative Judge erred in thinking that Delgado's 2018 Case was limited to the November 13, 2016 email. Throughout 2014, 2015, and 2016, Delgado had been emailing and speaking with various ASACs (assistant special agents in charge) and SACs (special agents in charge) before his November 13, 2016 email. Those earlier disclosures were protected under the Act just like his original disclosure on February 4, 2014. The decision-makers in the 2016 promotion denials knew about the larger history of Delgado's earlier disclosures. To the extent the AJ held otherwise, that holding was also arbitrary and capricious. It failed to come to grips with Delgado's actual allegations and evidence.[2]

---

[2] Delgado's November 2016 email and his administrative complaints also alleged some additional, more recent incidents of suspected wrongdoing within the agency. The AJ found that those disclosures were not protected, and Delgado has not pursued those matters before us.

III. *Causation of Denied Promotions*

The most significant issue for remand was causation: could Delgado show that his protected disclosure was a factor in any adverse employment decisions, and in particular in any decisions not to promote him to positions for which he was qualified? The Administrative Judge did her job properly on this issue, at least with respect to the 2014 Case, hearing testimony and making the necessary findings. Those findings favored Delgado.

After his original disclosure to the ASACs, Delgado sought promotions from his GS-13 position. He applied for several GS-14 jobs beginning in March 2014, just a month after his first protected disclosure. Such a promotion would have come with a pay increase and placed Delgado in a supervisory capacity over groups of ATF special agents. (The details vary, of course, based on the specific positions.) From 2014 to the time of his hearing in 2018, Delgado continued to apply for dozens of GS-14 positions. He was not selected for any of them despite, he argues, having all of the required qualifications.

We focus on two promotions that Delgado did not receive in early 2014. Before those specifics, though, a word about the rather formal interview and promotion process at ATF. Interviews are conducted by a Merit Promotion Board comprised of four people, one of whom must be the "receiving manager" for the position, meaning the supervisor who will manage the selected applicant. Each candidate is asked a predetermined set of questions, and each interviewer scores each candidate's answers. After all interviews are complete, the panel meets formally and deliberates on the record. The receiving manager speaks last so as not to bias the others' views. Despite

these formal procedures, the panel may discuss each candidate immediately following the interview. Those discussions are off the record, and panel members may change their scores during this time.

In March 2014 Delgado interviewed but was not selected for two GS-14 Group Supervisor positions (in the intelligence group and the joint terrorism task force, respectively) in ATF's Chicago Field Division. ASAC Durastanti, to whom Delgado made his first protected disclosure on February 4, 2014, served as the receiving manager on the Merit Promotion Board evaluating Delgado for both positions. Delgado argues that ASAC Durastanti decided not to promote him to these positions because of his protected disclosure about Labno.

The Administrative Judge found that Delgado's non-selections for both of the GS-14 promotions in early 2014 were caused by his disclosure:

> Applying the knowledge/timing test, ASAC Durastanti was a member of the selection panel for both vacancies, and was aware of the alleged protected disclosure because it was made to him. The non-selections took place within six weeks after the appellant made the alleged protected disclosure, satisfying the requirement that personnel actions occur "within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action."

Short App. 7, citing *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003), and *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 19 (2014).

If the Administrative Judge had ruled correctly that Delgado's disclosure was protected, her ruling on that point coupled with her finding that his disclosure was a contributing factor in his non-selections would have been enough, as a matter of law, to find that Delgado had carried his burden with respect to the March 2014 denials of promotions. All that should have been left for the AJ to do was to allow the agency to present its rebuttal case and then render a full decision on the merits.

While Delgado's 2014 formal complaint was pending, he continued to apply for promotions, leading to the 2018 Case. His more recent claims before the Administrative Judge and here on judicial review focus primarily on his 2016 applications to serve as the resident agent-in-charge of the Rockford, Illinois office, and for another group supervisor position in the Chicago Field Division. By 2016, the leadership of the Chicago Field Division office had been replaced: the SAC and two ASACs were all new to the office. Yet all three new managers were aware of the January 2012 incident and Delgado's disclosures about Labno. In September 2016, the new SAC had even talked with Delgado's former supervisor, Nicholas Starcevic (who by 2016 had transferred to ATF headquarters in Washington), about the possibility of promoting Delgado. The new SAC said he could not promote Delgado because "[i]t would kill the morale of the Division."

Delgado interviewed for the Rockford position on August 26, 2016 and for the Chicago position on October 24, 2016. ASAC Lauder was the receiving manager on the first panel, and ASAC Fragoso was the receiving manager on the other. Delgado was not chosen for either—*even though he was the only candidate on the Best Qualified List for the Chicago position*.

The agency did not dispute evidence that showed that the officials on the interview panel for the GS-14 positions in 2016 knew about Delgado's history of disclosures pertaining to Labno's testimony at the dealer's trial. Those officials, the SAC and both ASACs, talked with Delgado about those disclosures only a few months before making decisions not to promote him. Contrary to the AJ's ruling, that's all that Delgado needed to show to satisfy the knowledge/timing test and to carry his burden of proof as to whether his protected disclosures were a contributing factor in the adverse personnel actions taken against him. The AJ's decision on this point was also arbitrary and capricious.

IV. *The Agency's Right of Rebuttal*

Cutting through the Administrative Judge's failures to comply with our remand order, we find that the combination of our prior decision, Delgado's evidence at the hearing, and the AJ's findings on causation in the 2014 Case establish together that Delgado carried his burden of proof for both the 2014 and 2018 Cases. He made protected disclosures, he suffered adverse actions, he exhausted his remedies before the Office of Special Counsel, and he has shown via the knowledge/timing test that his protected disclosure was a contributing factor in his not being promoted to GS-14 in 2014 and again in 2016. Accordingly, he is entitled to corrective action unless "the agency demonstrate[d] by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2).

The Administrative Judge did not make findings on whether the agency carried its rebuttal burden because she found, arbitrarily, capriciously, and in defiance of our remand

order, that Delgado had not even made any protected disclosures. The government argues that if we find that the AJ's decisions under review cannot be affirmed, we should remand yet again so that the AJ can make findings on the agency's rebuttal case. We are mindful of the agency's statutory right, but we find such a remand unnecessary. The agency's evidence and arguments have already been heard. Its evidence fell short of satisfying the defense, both as to the March 2014 promotions and especially as to the 2016 promotion Delgado was denied despite being the only qualified candidate.

The Administrative Judge held a three-day evidentiary hearing with numerous witnesses. Neither party argues here that the record is incomplete. The AJ made clear that she expected the parties to offer their evidence on all the issues, including the agency's affirmative defense.[3] The AJ ended the evidentiary hearing by ordering the parties to submit their closing arguments in the form of written briefs, due nearly three months after the hearing. In its written closing argument, the agency argued: "The undisputed evidence of record also shows that the Agency demonstrated by clear and convincing evidence that it would have taken the same personnel actions—non-selecting Appellant for the three positions—regardless of the Appellant's protected disclosure." The

[3] For example, at one point in the hearing the agency objected to Delgado's testimony regarding his opinion of another applicant for one of the GS-14 positions. The AJ allowed that testimony, saying, "Okay, I'm going to have to allow this because, you know, if the Appellant meets all of his burden, as we've discussed and is in the pre-hearing conference order, then the Agency has to show, by clear and convincing evidence, that it would have taken the same actions anyway. So, I think the Appellant's opinion here is relevant to that. So, I'm going to allow some leeway."

agency's brief then marshaled its best arguments in favor of its rebuttal burden.

In short, the agency's rebuttal was on the record and was fully before the Administrative Judge. She did not reach that issue only because of the errors in her analysis of Delgado's prima facie case. On review, however, it is apparent that the agency's evidence and rebuttal arguments fall well short of a "clear and convincing" showing required by statute. The agency's closing brief of February 2019 made three primary arguments. The agency argued that the November 13, 2016 email that Delgado sent to then-Attorney General Lynch and others could not have influenced his non-selection for the 2016 GS-14 vacancies because members of the interview panel were unaware of this email. This is a rehash of the knowledge/timing analysis that we rejected above. The decision-makers were not aware of that particular email, but they were certainly aware of Delgado's history of protected disclosures on exactly the same issue.

The agency then touted the qualifications of the other agents who were selected for those positions. We might need to remand for further findings as to some of the promotions if the case depended on them. We are convinced, however, that such a remand is not appropriate at this stage of this long-term litigation siege.

First, we cannot overlook the Board's inexplicable refusal to comply with our previous remand order, nor the ATF's successful efforts to persuade the Board to flout the law of this case on whether Delgado engaged in protected activity.

Second, our review of the record persuades us that the agency's evidence cannot meet the high bar of "clear and convincing evidence" needed to establish the affirmative defense. See *Miller v. Dep't of Justice*, 842 F.3d 1252, 1257–58 (Fed. Cir. 2016) (reversing Board finding that agency had proven this defense, which was not supported by substantial evidence), quoting *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012) (vacating Board finding that agency had proven this defense; Board erroneously excluded or ignored critical evidence). The Federal Circuit, which hears most federal whistle-blower cases, has explained:

> Whether evidence is sufficiently clear and convincing to carry this burden of proof cannot be evaluated by looking only at the evidence that supports the conclusion reached. Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion.

*Whitmore*, 680 F.3d at 1368.

Reviewing the record as a whole, we find that one of the most striking points is Delgado's status as the only candidate on the Best Qualified List for the October 2016 promotion. This fact did not, by itself, entitle Delgado to the promotion, but there was more. Delgado had previously led the Chicago group in an acting position. And the receiving manager on the promotion panel was one of the assistant special agents in charge in Chicago, who reported to the special agent in charge. This is relevant because Delgado offered an undisputed affidavit from a senior ATF official stating that a month

or two before the 2016 decision not to promote Delgado, the special agent in charge of the Chicago office told him, "I can't promote this guy. It would kill the morale of the Division." Pet'r's App. 208–09. (By the time of the hearing, the special agent in charge had retired. He refused to testify voluntarily; neither side subpoenaed him.)

The Administrative Judge discounted this testimony without a more explicit link between this comment and the actions of the assistant special agent in charge on the promotion panel. With respect, since the special agent in charge had such strong feelings on the subject as to volunteer his views to a colleague at ATF headquarters, we find it hard to imagine that the special agent in charge had not made those views about Delgado known to his assistant special agent in charge.[4]

The evidence from that 2016 promotion board indicates that the assistant special agent in charge played a decisive role in convincing the panel not to promote Delgado. Two of the other three members of the panel actually scratched out and lowered their scores for Delgado's answers after the assistant special assistant in charge explained his views to them. See Pet'r's App. 120–21, 338–43, 373–75. Moreover, the testimony of the assistant special agent in charge explaining his reasons for not promoting Delgado was so inconsistent with the record that it could support a finding of pretext. Considering the

---

[4] Other portions of the official's affidavit provided substantial evidence that hostility to Delgado in the Chicago office was widespread in the wake of the Labno incident. When the official started in Chicago, "numerous personnel" advised him to stay away from Delgado, and key supervisors refused to support Delgado's investigations. The hostility stemmed from the Labno shooting incident. Pet'r's App. 208.

record as a whole, the ATF's evidence regarding the 2016 de-
nial could not reasonably be deemed to clear the high bar of
"clear and convincing evidence" needed to establish the af-
firmative defense.

Regarding the March 2014 decisions not to promote Del-
gado, the then-assistant special agent in charge, who had been
angry about Delgado's protected disclosure regarding Labno,
was on the promotion panel. Evidence from both Delgado
and the panel showed that the assistant special agent in
charge set ground rules for Delgado's interview that pre-
vented him from answering questions based on his extensive
experience with the United States Air Force. That put Delgado
at a significant disadvantage. Pet'r's App. 221–22 & 232. One
of the two selected candidates had less, and less relevant, ex-
perience. And the panel members described the other as "a bit
rough around the edges." Administrative R. 188, ECF No. 51-
4. Overall, the agency's highly subjective explanations for not
promoting the qualified and more experienced Delgado just
weeks after his whistleblowing also cannot clear the high bar
of "clear and convincing evidence."

Finally, the sheer number of promotions Delgado was
qualified for but denied in the wake of his protected disclo-
sure weighs against the affirmative defense. Perhaps one or
two might be explained away. But there is ample evidence
here of widespread resentment of Delgado's protected disclo-
sure and too many denials to accept all of the agency's expla-
nations as clear and convincing. After his protected disclo-
sure, Delgado's career was going nowhere. Reviewing the rec-
ord as a whole, we conclude that a remand on the agency's
affirmative defense would waste both judicial and the parties'

resources. Moreover, based on the response to our first re-mand, we must say with regret that we are not confident that such an order would be faithfully implemented.

Accordingly, we VACATE the decision of the Merit Systems Protection Board in both cases under review. We REMAND only for calculation of damages based on salary and benefits as if Delgado had been promoted, as he should have been, to GS-14 as of March 4, 2014, and for a decision on the merits as to whether he is entitled to any additional relief, including whether he would have received any subsequent promotion to GS-15. If we were remanding to a U.S. district court, we would ensure that a different judge would preside. See Cir. R. 36. Here that choice is left to the Board's discretion, but we strongly urge the Board to assign a new administrative judge to this case. See *Georgis v. Ashcroft*, 328 F.3d 962, 970 (7th Cir. 2003). Finally, we invite Mr. Delgado to submit a motion to this court for attorney's fees pursuant to 5 U.S.C. § 1221(g)(1)(B)(3).