**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MICHAEL J. YEKSIGIAN,<br>    Appellant,<br><br>    v.<br><br>DEPARTMENT OF DEFENSE,<br>    Agency. | DOCKET NUMBERS<br>DC-1221-17-0767-W-2<br>DC-0752-15-1188-I-4<br><br><br>DATE: June 26, 2023 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Raymond C. Fay, Esquire, and Jessica T. Ornsby, Esquire,
    Washington, D.C., for the appellant.

James Vietti, Esquire, Lisa Marie Golden, Esquire, Lundi McCarthy
    Shafiei, Esquire, and Supraja T. Murali, Esquire, Washington, D.C., for
    the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision in these
joined individual right of action (IRA) and removal appeals, which denied his

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

request for corrective action and affirmed his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to vacate the portions of the initial decision finding that the agency proved by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's purported disclosures and to merge the failure to follow leave procedures charge with the absence without leave (AWOL) charge, we AFFIRM the initial decision.

## BACKGROUND

¶2    Beginning in April 2011, the appellant served as a Program Manager with the Program Analysis and Evaluation Office (PA&E) of the Pentagon Force Protection Agency (PFPA), a component of the Department of Defense (DoD). *Yeksigian v. Department of Defense*, MSPB Docket No. DC-1221-17-0767-W-2, Appeal File (W-2 AF), Tab 18 at 5-6. Shortly after he started working at PFPA, the appellant became concerned that it lacked the proper acquisition authority, i.e., the authority to purchase goods and contract for services. W-2 AF, Hearing Transcript, Day 1 (HT1) at 248-49 (testimony of the appellant). He investigated the matter and learned that PFPA's charter did not provide the PFPA Director

with acquisition authority for PFPA programs and the Office of the Under Secretary of Defense for Acquisition, Technology and Logistics (AT&L), a separate DoD agency, had not issued a letter delegating acquisition authority to PFPA. *Id.* at 251-52, 265-66; W-2 AF, Tab 19 at 420. The appellant also learned that AT&L had issued a directive delegating acquisition authority to the Acquisition Directorate (AD) of another DoD component, the Washington Headquarters Service (WHS), which had acquisition authority for both WHS and PFPA. W-2 AF, Tab 19 at 395, Tab 20 at 23.

¶3        On March 14, 2014, the appellant sent an email to PFPA's Chief of Staff conveying his "initial thoughts" on the acquisition authority issue. W-2 AF, Tab 20 at 30. The appellant argued that PFPA should secure a delegation of acquisition authority from AT&L because "PFPA is a complete and separate entity" from WHS and, absent such a delegation, PFPA would require WHS's permission to manage its programs. *Id.* The appellant stated, "I don't think the [PFPA] Director should have to go to WHS to manage PFPA programs." *Id.*

¶4        On March 25, 2014, the appellant sent an email to various agency officials, including his immediate supervisor and PFPA's Director and Deputy Director, stating that PFPA's lack of contracting authority "possess [sic] a dilemma as to who is legally responsible for decisions associated with the PFPA acquisition process." W-2 AF, Tab 20 at 31. The appellant asserted that he had discussed this matter with individuals in AT&L and "it was recommend [sic]"[2] that PFPA obtain a memorandum from AT&L delegating acquisition authority to the PFPA Director because PFPA is a completely separate entity from WHS. *Id.* The appellant claimed that such a memorandum would make it clear that "the PFPA Director is the Senior Procurement Executive for [PFPA] and is solely

---

[2] It is unclear whether this recommendation was made by AT&L personnel or the appellant.

responsible for the acquisition decisions associated with the procurement of goods and services for [PFPA]." *Id.*

¶5 On April 14, 2014, the appellant met with AT&L's Acting Deputy Director for Contract Policy and International Contracting (Contracting ADD) to discuss the appellant's concerns about PFPA's acquisition authority. W-2 AF, Tab 30 at 24. In an email exchange with the Contracting ADD later that week, the appellant asked whether there was "clear guidance of what programs would require Delegated Acquisition Authority from AT&L." *Id.* at 23. In response, the Contracting ADD recommended that the appellant consult DoD Directive 5000.01, which defines the term "acquisition program" as follows: "directed, funded effort that provides new, improved, or continuing materiel, weapon or information systems or service capability in response to an approved need." *Id.* at 22. The Contracting ADD explained that PFPA would need acquisition authority if it was going to acquire any of the defined capabilities, but not if it was buying a commercial product. *Id.* at 22-23.

¶6 On June 24, 2014, the appellant called in to work sick and went for a walk. HT1 (testimony of the appellant). Later that morning, local police stopped the appellant for allegedly following a woman on foot for about one mile while taking multiple photographs with his telephone as she attempted to evade him. W-2 AF, Tab 42 at 6. The police officers noted that, during the stop, the appellant did not provide coherent answers to their questions and was singing to himself and dancing on the sidewalk. *Id.* That afternoon, the appellant went to the building where he worked and told an AT&L employee that he had information about someone "wanting to blow up" Arlington, Virginia. *Id.* at 18.

¶7 Later that day, PFPA's Acting Assistant Director for Mission Integration (Mission Integration AAD) issued a memorandum notifying the appellant that he was being placed on administrative leave (AL memo) and explaining the conditions of his administrative leave. *Yeksigian v. Department of Defense*, MSPB Docket No. DC-0752-15-1188-I-1, Initial Appeal File (I-1 IAF), Tab 9

at 86-87. The AL memo stated that the appellant was required to contact the Mission Integration AAD by 8:30 a.m. daily to ask if he was to report for duty, and that he was expected to remain available by telephone during his normal work hours and be ready and available to return to work within 2 hours of being notified to do so. *Id.* at 86. The AL memo also stated that if the appellant needed to take sick or annual leave—during which time he would not be available by telephone or available to return to work—he was required to request leave from the Mission Integration AAD and would be notified if it was approved. *Id.* Lastly, the AL memo warned the appellant that his failure to comply with proper leave procedures could result in his being charged AWOL. *Id.*

¶8 In September of 2014, the appellant traveled to France, and he was on approved leave from September 2 through October 4, 2014. W-2 AF, Tab 18 at 21, 23, 27. On September 17, 2014, the appellant telephoned his supervisor and inquired about taking medical/sick leave. *Id.* at 30. The next day, an employee with PFPA's Human Capital Program Management Directorate emailed the appellant an Office of Personnel Management (OPM) Form 71, "Request for Leave or Approved Absence," and provided him with information related to the Family and Medical Leave Act of 1993 (FMLA). I-1 IAF, Tab 10 at 41. In the email, the employee notified the appellant that he was required to submit a completed OPM Form 71 for each pay period during which he sought to invoke his FMLA rights, along with supporting medical documentation and an expected "return to duty" date. *Id.*

¶9 On October 1, 2014, the appellant notified his supervisor via email that he was scheduled to remain in Paris until the middle of November and wanted to use sick leave for the rest of his time abroad because he had used nearly all of his annual leave. W-2 AF, Tab 18 at 28. In response, the appellant's supervisor sent the appellant an email on October 3, 2014, notifying him that he had exhausted his regular available leave on or about September 26, 2014, that his approved

leave would end on October 4, 2014, and that the period between September 26 and October 4, 2014, would be recorded as Leave Without Pay (LWOP). *Id.*

¶10     In the email, the appellant's supervisor informed the appellant that sick leave usage is not intended to supplement exhausted annual leave, and explained that the appellant could request sick leave and/or FMLA leave for certain reasons, including personal medical care needs. *Id.* at 27. The appellant's supervisor also informed the appellant that, if he applied for FMLA leave or more than 3 calendar days of sick leave, he was required to submit certain documentation, including a completed OPM Form 71, by October 17, 2014, and that PFPA would decide whether to approve his request for extended sick leave after it received the documentation. *Id.* Finally, the appellant's supervisor stated that the appellant was expected to fully comply with the requirements of the AL memo; thus, if he was not available to report for duty on Monday, October 6, 2014, he would be charged with AWOL and subject to the full range of penalties for adverse disciplinary actions, including removal. *Id.*

¶11     On October 6, 2014, the appellant sent his supervisor an email stating that he was taking sick leave for the day because he was not feeling well. W-2 AF, Tab 18 at 32. In his email response, the appellant's supervisor notified the appellant that he was being placed in an AWOL status effective October 6, 2014, and that he had three options: (1) return to the United States and abide by the directions in the AL memo; (2) provide sufficient documentation to support a request for sick leave; or (3) be placed on AWOL and subject to future disciplinary action, up to removal from Federal service. *Id.* at 31. The appellant's supervisor also provided the appellant an OPM Form 71 and asked him to complete the form and return it with supporting documentation to substantiate the need for sick leave. *Id.*

¶12     On October 7 and 8, 2014, the appellant notified his supervisor by email that he was "[s]till not feeling well" and would continue to take sick leave. W-2 AF, Tab 18 at 38-40. On October 9, 2014, the appellant sent his supervisor an

email stating that he did not feel safe in the United States and would obtain the required documentation so that he could start taking his "stockpile of sick leave." *Id.* at 42.

¶13    On October 17, 2014, the appellant emailed his supervisor an unsigned OPM Form 71, requesting 232 hours of accrued sick leave under the FMLA for September 29 to November 7, 2014. I-1 IAF, Tab 9 at 128. The appellant did not submit any medical documentation, but stated in his email that his physician's office would send supporting documentation to PFPA. *Id.*

¶14    On November 6, 2014, the appellant's supervisor sent the appellant a memorandum inquiring about his intention to return to duty. I-1, IAF, Tab 9 at 131-32. In the memorandum, the appellant's supervisor ordered the appellant to comply with the requirements of the AL memo or advise the supervisor in writing of his intent to remain employed at PFPA by November 12, 2014. *Id.* at 132. The memorandum also informed the appellant that he had three options: (1) return to duty by November 12, 2014, if medically able to do so; (2) request a reasonable accommodation to effectively enable him to perform the essential functions of his position; or (3) submit a written resignation letter to the supervisor by close of business on November 12, 2014, if he did not intend to return to work. *Id.* at 132. In his memorandum, the appellant's supervisor also warned the appellant that he intended to propose his separation from Federal service if he failed to exercise any of these options and inform the supervisor which option he had chosen by November 12, 2014. *Id.* The appellant did not exercise any of these options by that date; however, he returned to administrative leave on November 18, 2014. *Id.* at 28.

¶15    On March 20, 2015, the agency issued a notice proposing to remove the appellant based on three charges: (1) AWOL; (2) failure to follow leave procedures; and (3) failure to follow supervisory instructions. I-1 IAF, Tab 9 at 41-47.

¶16       The AWOL charge alleged that the appellant was AWOL between October 6 and November 17, 2014. *Id.* at 41.

¶17       In support of the charge of failure to follow leave procedures, the agency alleged that, pursuant to the AL memo, the appellant was required to follow established leave procedures if he was unavailable to return to work within two hours of being notified to do so. *Id.* It further alleged that, between October 6 and November 17, 2014, the appellant was in Paris, France, and therefore, unavailable to return to duty at the Pentagon within 2 hours of being notified to do so. *Id.* The agency asserted that, consequently, the appellant's administrative leave status was suspended and he was required to comply with proper leave procedures to request leave to cover all duty hours during which he was unavailable. *Id.*

¶18       In support of the third charge, failure to follow supervisory instructions, the agency alleged that, in a memorandum dated November 6, 2014, the appellant was ordered to either comply with the AL memo or advise his supervisor in writing of his intent to remain employed with PFPA by November 12, 2014; however, the appellant did not respond in writing prior to that date. *Id.*

¶19       On March 23, 2015, the appellant filed a complaint with the Office of Special Counsel, alleging that the agency took various actions against him in reprisal for his whistleblowing, including banning him from communicating with AT&L and placing him on administrative leave. *Yeksigian v. Department of Defense*, MSPB Docket No. DC-1221-17-0767-W-1, Initial Appeal File (W-1 IAF), Tab 1 at 32. The appellant subsequently amended the complaint to allege that the agency also retaliated against him for his whistleblowing by proposing his removal. W-1 IAF, Tab 7 at 20.

¶20       On April 1, 2015, the appellant submitted a written reply to the proposed removal. I-1 IAF, Tab 9 at 49-67. On August 18, 2015, the deciding official issued a decision sustaining all of the charges and finding removal warranted. *Id.*

at 35-38. The agency removed the appellant from his position effective August 28, 2015. *Id.* at 33-34.

¶21 On September 25, 2015, the appellant filed a Board appeal challenging his removal and raising an affirmative defense of whistleblower retaliation. I-1 IAF, Tab 1 at 6. He also filed an IRA appeal with the Board. W-1 IAF, Tab 1. The administrative judge joined the IRA and removal appeals. W-1 IAF, Tab 6.

¶22 Following a 3-day hearing, the administrative judge issued an initial decision that denied the appellant's request for corrective action in his IRA appeal and affirmed the appellant's removal. W-2 AF, Tab 79, Initial Decision (ID). In the IRA appeal, the administrative judge found that the appellant failed to establish that he made a protected disclosure and, therefore, failed to establish a prima facie case of whistleblower retaliation. ID at 11-16. In the alternative, the administrative judge found that, even if the appellant had established a prima facie case of whistleblower retaliation, he was not entitled to corrective action because the agency proved by clear and convincing evidence that it would have taken the same actions in the absence of the protected disclosure. ID at 16-22.

¶23 In the removal appeal, the administrative judge found that the agency proved all of the charges by preponderant evidence, ID at 23-27, that there is a nexus between the charges and the efficiency of the service, ID at 28, and that the penalty of removal is reasonable, ID at 28-30. The administrative judge also found that the appellant failed to prove his affirmative defense. ID at 30-32.

¶24 The appellant has filed a petition for review, the agency has filed a response in opposition to the petition for review, and the appellant has filed a reply to the agency's response. MSPB Docket No. DC-1221-17-0767-W-2, Petition for Review (PFR) File, Tabs 5, 9, and 12.

## ANALYSIS

IRA Appeal

*The administrative judge correctly found that the appellant failed to establish that he made a protected disclosure.*

¶25      After establishing the Board's jurisdiction in an IRA appeal, the appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that:  (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).   5 U.S.C. § 1221(e)(1); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011).  If the appellant proves that his protected disclosure or activity was a contributing factor in a personnel action taken against him, the agency is given the opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity.  5 U.S.C. § 1221(e)(1)-(2); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

¶26      A protected disclosure is any disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A); *Salerno*, 123 M.S.P.R. 230, ¶ 2 n.1.  The proper test for assessing whether a protected disclosure occurred is an objective one:  Could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8)(A)?  *Salerno*, 123 M.S.P.R. 230, ¶ 6.  General philosophical or policy disagreements with agency decisions or actions are not protected unless they separately constitute a

protected disclosure of one of those categories of wrongdoing. *See* 5 U.S.C. § 2302(a)(2)(D); *White v. Department of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004) (stating that a mere policy dispute does not amount to a protected disclosure within the meaning of the whistleblower protection statutes); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015).

¶27     As noted in the initial decision, at issue in this appeal is the appellant's disclosure to various agency officials that PFPA lacked acquisition authority to purchase goods and services. ID at 9 (citing W-1 IAF, Tab 8). In assessing whether this disclosure was protected, the administrative judge considered the relevant documentary evidence and hearing testimony, including the testimony of the appellant, the Contracting ADD, and PFPA's Acquisitions and Requirements Chief (AR Chief), whose division is responsible for all PFPA acquisitions and procurements. ID at 12-15; W-2 AF, Hearing Transcript, Day 3 (HT3) at 854 (testimony of the AR Chief).

¶28     During his hearing testimony, the AR Chief explained that, pursuant to the policies and regulations governing PFPA's procurement process, PFPA procures goods and services through the contracting office of WHS/AD, which has acquisition and procurement authority for PFPA.[3] HT3 at 856-59 (testimony of the AR Chief). In particular, the AR Chief noted that a July 21, 2014 memorandum from AT&L's Director of Defense Procurement and Acquisition

---

[3] During the hearing and in his email correspondence with the appellant, the Contracting ADD distinguished between acquisition and procurement. HT3 at 830-32 (testimony of the Contracting ADD); W-2 AF, Tab 30 at 22-23. The Contracting ADD testified that acquisition is a broader function than procurement, as procurement officials contract for goods and services on behalf of DOD, whereas officials with acquisition authority determine which goods and services will be acquired. HT3 at 830 (testimony of the Contracting ADD). He further testified that commercial goods and services are not subject to the acquisition process. *Id.* at 831-32. Similarly, in an April 17, 2015 email to the appellant, the Contracting ADD explained that PFPA would not need acquisition authority to purchase a commercial product, as that action would be considered procurement, not acquisition. W-2 AF, Tab 30 at 22-23.

Policy delegates PFPA acquisition authority to the Director of WHS's Acquisition and Procurement Office (APO) – the lead contracting officer at WHS. *Id.* at 867; W-2 AF, Tab 51 at 157. The AR Chief also testified that PFPA's charter states that WHS will procure items for PFPA. HT3 at 859 (testimony of the AR Chief); W-2 AF, Tab 19 at 420. The AR Chief further testified that DoD Directive 5000.01 does not apply to PFPA because the DoD 5000 series of regulations governs major weapons systems, such as tanks and airplanes, which PFPA does not acquire. HT3 at 862-63 (testimony of the AR Chief). The administrative judge credited the AR Chief's testimony, finding that it was supported by the evidence in the record. ID at 14.

¶29 The administrative judge further found that the agency provided sufficient documentation to show that PFPA's acquisition authority was proper. ID at 14. Specifically, he noted that: (1) a February 9, 2006 memorandum from the WHS Director delegated PFPA acquisition authority to the WHS/APO director; and (2) a March 14, 2011[4] memorandum from the Secretary of Defense stated, "WHS will manage all [Office of the Secretary of Defense] contracting under a single Enterprise Contracting Office [SECO]." ID at 14-15; W-2 AF, Tab 19 at 395, 405. The administrative judge found that the appellant was aware, or should have been aware, of those documents.[5] ID at 15.

¶30 Based on the documentary evidence and hearing testimony, the administrative judge found that the appellant's disclosure that PFPA lacked acquisition authority constituted a policy dispute about whether WHS or PFPA

---

[4] The initial decision incorrectly identifies the date of the memorandum as May 14, 2011. ID at 14; W-2 AF, Tab 19 at 349.

[5] The record demonstrates that the appellant was aware of the March 14, 2011 memorandum, i.e., the SECO directive. In a January 14, 2014 email addressing the appellant's questions regarding PFPA's acquisition authority, the Policy Officer for WHS/AD informed the appellant that the SECO directive provides that WHS/AD is the single acquisition activity responsible for WHS and PFPA. W-2 AF, Tab 20 at 23.

should have acquisition authority for PFPA, and that the appellant did not reasonably believe that he had disclosed a violation of law, rule, or regulation. ID at 12, 15. The administrative judge therefore found that this disclosure was not protected. ID at 12.

¶31 The appellant challenges these findings on review. PFR File, Tab 5 at 16-19. The appellant states that, in finding that his disclosure was not protected, the administrative judge relied on the AR Chief's testimony that DoD Directive 5000.01 applies only to major weapons systems, which PFPA does not acquire. PFR File, Tab 5 at 18; ID at 14; HT3 at 862-63 (testimony of the AR Chief). The appellant asserts that he examined the same directive and reasonably concluded that it did not apply only to weapons systems.[6] Therefore, the appellant seems to contend his disclosure about PFPA's lack of acquisition authority was protected because he reasonably believed that DoD Directive 5000.01 required PFPA to have acquisition authority. PFR File, Tab 5 at 18.

¶32 We find this apparent argument unpersuasive. When the Contracting ADD recommended that the appellant consult the definition of "acquisition program" set forth in DoD Directive 5000.01 to determine whether PFPA would need acquisition authority for any of its programs, he specifically stated that PFPA would not need acquisition authority to buy a commercial product. W-2 AF, Tab 30 at 23. During the hearing, the AR Chief testified that, to his knowledge, PFPA does not acquire non-commercial goods or services. HT3 at 861-62

---

[6] The appellant further argues on review that the administrative judge's finding that the Contracting ADD agreed with the AR Chief's testimony about the major weapons systems is not borne out by the Contracting ADD's testimony and writing. PFR File, Tab 5 at 19. The administrative judge did not make such a finding, however. The only statement in the initial decision regarding the Contracting ADD's testimony about PFPA's acquisition authority is that he testified that it was possible that PFPA had the proper delegation of authority in place to acquire goods and services. ID at 14 (citing HT3 at 844 (testimony of the Contracting ADD)). We have reviewed the Contracting ADD's testimony and find that the administrative judge did not mischaracterize it, as the appellant suggests. HT3 at 844 (testimony of the Contracting ADD).

(testimony of the AR Chief). The appellant did not offer any evidence that PFPA acquires anything other than commercial goods and services. Given these circumstances, we find that the appellant did not reasonably believe that PFPA's lack of acquisition authority violated DoD Directive 5000.01.

¶33        The appellant also argues on review that the administrative judge erred in finding that his claim that PFPA lacked acquisition authority was merely a policy dispute about which DoD agency or component should have acquisition authority for PFPA. PFR File, Tab 5 at 18. The appellant asserts that his claim was not based on whether another agency could exercise acquisition authority for PFPA. *Id.* Rather, he contends, his claim was based on the premise that he was tasked with investigating whether PFPA had the ability to exercise that authority for itself, and he found no evidence that PFPA had that authority. *Id.* at 18.

¶34        This argument is difficult to decipher. The appellant seems to argue that, in stating that PFPA did not have acquisition authority, he was not disagreeing with the policy delegating WHS acquisition authority for PFPA, but was simply disclosing the results of his investigation as to whether PFPA was authorized to exercise acquisition authority for itself. *Id.*

¶35        The record indicates, however, that the appellant was not merely reporting that WHS had acquisition authority for PFPA; he was disagreeing with the decision to delegate that authority to WHS based on his view that the PFPA Director should not "have to go to WHS to manage PFPA programs." W-2 AF, Tab 20 at 30. In any event, even assuming that the appellant's disclosure concerning PFPA's lack of acquisition authority does not constitute a policy dispute about whether another agency should exercise acquisition authority for PFPA, but is merely a statement that PFPA does not have that authority, he has not shown by preponderant evidence that he reasonably believed that PFPA's lack of contracting authority evidenced one of the categories of wrongdoing set forth in 5 U.S.C. § 2302(b)(8)(A).

¶36     Because we have found that the appellant failed to prove that he made a protected disclosure, it is unnecessary to decide whether the agency proved by clear and convincing evidence that it would have taken the personnel actions at issue in the IRA appeal in the absence of his disclosure. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (holding that the Board may not proceed to the clear and convincing test unless it has first made a finding that the appellant established his prima facie case), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).[7]    Accordingly, we vacate the administrative judge's findings concerning whether the agency met its clear and convincing burden.

Removal Appeal[8]

*We modify the initial decision to merge the failure to follow leave procedures charge into the AWOL charge.*

¶37     As noted above, the agency charged the appellant with both AWOL and failure to follow leave procedures. I-1 IAF, Tab 9 at 41. The Board will merge charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 10 (2014). Here, the agency charged the appellant with failure to follow leave procedures for the same dates that he was charged with AWOL, and the AWOL charge was based on his failure to follow proper leave procedures to cover his absences on those dates. I-1 IAF, Tab 9 at 35-36. Therefore, we find it appropriate to merge these two charges. *See McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 4 n.3 (2014) (finding that the

---

[7] Although the U.S. Court of Appeals for the Seventh Circuit has disagreed with the Board's decision in *Clarke*, it has done so on different grounds. *Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 923-25 (7th Cir. 2018). Thus, its disagreement does not implicate the basis for which we cite *Clarke* here.

[8] On review, the appellant does not challenge the administrative judge's finding that the agency proved the charge of failure to follow supervisory instructions. *See generally* PFR File, Tab 5; ID at 27. We discern no basis upon which to disturb that finding.

administrative judge properly merged into the AWOL charge specific instances of failure to follow leave restriction letter procedures that were also listed under the AWOL charge); *Westmoreland v. Department of Veterans Affairs*, 83 M.S.P.R. 625, ¶ 6 (1999) (merging charges of failure to follow leave-requesting procedures and AWOL when the charge of AWOL was based solely on the appellant's failure to follow leave-requesting procedures), *aff'd*, 19 F. App'x 868 (Fed. Cir. 2001), *overruled on other grounds as recognized in Pickett v. Department of Agriculture*, 116 M.S.P.R. 439, ¶ 11 (2011).  Because the failure to follow leave procedures charge merges into the AWOL charge, proof of the AWOL charge will constitute proof of the failure to follow leave procedures charge.  *See Powell*, 122 M.S.P.R. 60, ¶ 10.

> *The administrative judge correctly found that the agency proved the AWOL charge by preponderant evidence.*

¶38    To prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied.  *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 28 n.5 (2015), *overruled on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25.  In sustaining the AWOL charge, the administrative judge found as follows:  (1) it is undisputed that the appellant was absent from work between October 6 and November 17, 2014; (2) the agency demonstrated that the appellant's absence during this time was not authorized; and (3) the agency properly denied the appellant's requests for sick leave and FMLA leave.  ID at 23-26.

¶39    The appellant argues on review that it is "legally impossible" for an employee to be absent from work while on administrative leave because he is not required to be at work.  PFR File, Tab 5 at 32.  Similarly, he contends that an employee on administrative leave cannot be absent from work without authorization, as his absence is authorized by virtue of his placement on administrative leave.  *Id.*

¶40    These arguments are unavailing. As previously discussed, the AL memo set forth the conditions of the appellant's administrative leave—including the requirement that he be available to return to duty with 2 hours' notice. I-1 IAF, Tab 9 at 86. In addition, the AL memo warned the appellant that if he failed to satisfy this requirement, he would no longer be on administrative leave. *Id.* at 86.

¶41    Although the appellant's approved leave ended on October 4, 2014, he remained in France until mid-November 2014 and thus was not available to return to duty with 2 hours' notice. W-2 AF, Tab 18 at 28. Consequently, pursuant to the terms of the AL memo, he was no longer in an administrative leave status as of Monday, October 6, 2014. I-1 IAF, Tab 9 at 86.

¶42    Further, the record clearly shows that the appellant's absence during the period covered by the AWOL charge was not authorized. For example, in his November 6, 2014 memorandum inquiring about the appellant's intent to return to duty, the appellant's supervisor explicitly informed the appellant that his absence since October 6, 2014, was not authorized. *Id.* at 132.

¶43    In evaluating whether the agency properly denied the appellant's requests for sick leave and FMLA leave, the administrative judge considered the agency's leave policy, which is set forth in Administrative Instruction 67 (AI 67). ID at 24-25; I-1 IAF, Tab 10 at 47-82, Tab 11 at 4-17. The administrative judge noted that AI 67 provides that an employee requesting sick leave or FMLA leave must submit a completed OPM Form 71 to his leave-approving official in advance of the requested absence. ID at 25; I-1 IAF, Tab 10 at 62, Tab 11 at 9. For sick leave requests, the official is entitled to receive administratively acceptable medical documentation in support of the request. ID at 25; I-1 IAF, Tab 10 at 63. Similarly, an employee requesting FMLA leave may be required to submit administratively acceptable medical documentation to substantiate the FMLA entitlement. ID at 25; I-1 IAF, Tab 11 at 9.

¶44    The administrative judge found that the agency notified the appellant of the requirement to submit a completed OPM Form 71 to request sick leave or FMLA

leave, and the requirement to provide medical documentation; however, the appellant failed to provide a signed, completed OPM Form 71 and failed to provide medical documentation to justify the approval of sick leave. ID at 25 (citing I-1 IAF, Tab 10 at 34-35). Therefore, the administrative judge found, the agency was justified in denying the appellant sick leave and FMLA leave. ID at 25-26.

¶45    On review, the appellant argues that, although he did not provide any medical documentation in support of his leave request when he submitted his OPM Form 71 in October 2014, he subsequently provided the requisite documentation when his physician in the United States submitted a report dated March 31, 2015, that provided a legitimate basis for his October 2014 leave request. PFR File, Tab 5 at 30-32; W-2 AF, Tab 46 at 5-6. The appellant contends that, because his doctor submitted the medical documentation before the agency's decision to remove him, the agency should have granted his leave request retroactively and rescinded the AWOL charge. PFR File, Tab 5 at 22, 30-32 (citing *Nash v. U.S. Postal Service*, 8 M.S.P.R. 307, 310-11 (1981) (holding that when an employee has submitted untimely medical evidence documenting that he was incapacitated for duty, prior to the agency's decision to remove him on AWOL charges, the charges for those dates cannot be sustained because sick leave was improperly denied)).

¶46    An AWOL charge will not be sustained if an appellant presents administratively acceptable evidence showing that he was incapacitated for duty during the relevant time period if the employee has sufficient sick leave to cover the period of absence. *See Thom v. Department of the Army*, 114 M.S.P.R. 169, ¶ 5 (2010). We have reviewed the March 31, 2015 report submitted by the appellant's physician to determine whether it meets this standard. In his report, the appellant's physician stated that the appellant had been his patient since July 2, 2014, and he had seen him for office visits two other times—on September 2, and November 17, 2014. W-2 AF, Tab 46 at 5. The physician

further stated that, although he and the appellant "had no formal conversation to determine when [the appellant] was appropriate to return to duty, it seemed apparent that 9/2/14 would not have been the appropriate time." *Id.*

¶47 This report does not show that the appellant was incapacitated from performing his duties during the period at issue. *See Thom*, [114 M.S.P.R. 169](#), ¶ 6. Accordingly, we find that the appellant has not provided administratively acceptable evidence to justify his absence from October 6 to November 17, 2014. We therefore conclude that the medical documentation submitted by the appellant provides no basis for finding that the AWOL charge cannot be sustained.

¶48 In sum, we agree with the administrative judge that the agency proved by preponderant evidence that the appellant was absent from work on the dates in question, that his absence was not authorized, and that his leave requests were properly denied. ID at 23-26. Therefore, we find that the administrative judge properly found that the agency proved the AWOL charge. ID at 26.

*The appellant's remaining arguments regarding his leave status provide no basis to disturb the initial decision.*

¶49 On review, the appellant makes several other allegations of agency error involving his leave status. PFR File, Tab 5 at 20-33. We have considered these allegations as claims of harmful procedural error. The Board will not sustain an agency's decision if an appellant proves the affirmative defense of harmful error in the agency's application of its procedures in arriving at such decision. *Doe v. Department of Justice*, [123 M.S.P.R. 90](#), ¶ 7 (2015). Harmful error cannot be presumed; an agency's error is harmful only where the record shows that a procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.*

¶50 The appellant argues on review that the agency placed him on administrative leave without any justification, and that the conditions of his administrative leave were a "sham," particularly the requirement that he be

available to return to duty with 2 hours' notice, as the agency had no intention of returning him to work. PFR File, Tab 5 at 22-25. The appellant further argues that, by placing him on administrative leave for several months, the agency failed to comply with OPM guidelines (which provide that administrative leave generally should not be used for an extended or indefinite period) and AI 67 (which states that administrative leave should be granted sparingly and that absences for other than brief periods have been ruled inappropriate). *Id.* at 23-24; I-1 IAF, Tab 10 at 67.

¶51    These arguments are unavailing. To the extent that the appellant is challenging the agency's decision to place him on administrative leave, it is well settled that paid administrative leave is not an adverse action appealable to the Board. *LaMell v. Armed Forces Retirement Home*, 104 M.S.P.R. 413, ¶¶ 7, 9 (2007).

¶52    As for the appellant's argument that the agency violated OPM guidelines and its own leave policy by placing him on administrative leave for an extended period of time, neither of the provisions cited by the appellant preclude the use of administrative leave, nor has the appellant shown that the agency's actions caused him any harm.[9] Therefore, we find that the appellant failed to prove any harmful error in conjunction with his placement on administrative leave.

¶53    The appellant also argues on review that the agency improperly placed him on AWOL for the week of October 6, 2019, and should have placed him on annual leave instead. PFR File, Tab 5 at 20-21. In support of this argument, the appellant contends that his earnings and leave statement for the pay period ending November 1, 2014, indicates that he had an annual leave balance of 43.99 hours

---

[9] Further, the provision of AI 67 cited by the appellant seems to pertain to situations in which the appellant has requested administrative leave and thus is not relevant here. I-1 IAF, Tab 10 at 67.

as of that date and, therefore, he could have used annual leave during the week of October 6, 2014. *Id.* at 20-21; W-2 AF, Tab 26 at 16.

¶54    The record contains conflicting evidence as to whether the appellant had any annual leave. Although the earnings and leave statement cited by the appellant indicates that he had an annual leave balance of 43.99 hours as of November 1, 2014, other record evidence indicates that the appellant had 35 hours of annual leave at the beginning of the pay period ending on October 4, 2014, and thus exhausted his annual leave on September 26, 2014. W-2 AF, Tab 18 at 36.

¶55    We need not resolve this matter, however. Even if the appellant did not exhaust his leave on September 26, 2014, but, instead, had an annual leave balance of 43.99 hours as of that date, his leave presumably would have been applied to the week ending October 4, 2014, rather than the following week, as the agency had approved his absence through October 4, 2014. W-2 AF, Tab 18 at 27. Consequently, he would not have had enough annual leave to cover his absence for the week of October 6, 2014.

¶56    Further, even if the agency should have placed the appellant on annual leave for the week of October 6, 2014, any error in that regard provides no basis for disturbing the initial decision. Had the appellant been in an annual leave status for the week of October 6, 2014, he still would have been AWOL for more than 1 month, i.e., from October 13 to November 17, 2014, and the Board has upheld the penalty of removal for fewer days of AWOL. *Foreman v. U.S. Postal Service*, 89 M.S.P.R. 328, ¶ 17 (2001) (holding that removal is reasonable for 16 days of AWOL).

¶57    We find similarly unavailing the appellant's argument on review that the agency improperly denied his requests for sick leave from October 6-9, 2014. PFR File, Tab 5 at 21-22; W-2 AF, Tab 32 at 25; Tab 33 at 8, 12-13. The appellant contends that the agency should have granted these requests because he

explained the reasons for them and AI 67 authorizes employees to self-report and certify short-term illnesses. PFR File, Tab 5 at 21-22; I-1 IAF, Tab 10 at 64.

¶58    As previously discussed, AI 67 provides that a leave-approving official is entitled to receive administratively acceptable medical documentation from an employee in support of sick leave requests. I-1 IAF, Tab 10 at 63. Although this instruction states that the employee "normally" will not be requested to provide certification for absences of 3 days or less, and that the employee's self-certification as to the reason for his or her absence may be considered administratively acceptable evidence, regardless of the duration of the absence, it also states that the leave-approving official may request administratively acceptable medical documentation if there are circumstances that cause the supervisor to believe the request for sick leave may be improper. *Id.* at 63-64. We find that such circumstances were present during the week of October 6, 2014, given the appellant's statement to his supervisor in his October 1, 2014 email that he wanted to use sick leave for the remaining 6 weeks of his time abroad because he had used almost all of his annual leave. W-2 AF, Tab 18 at 28. Therefore, we find that the appellant's supervisor did not err by requiring the appellant to provide certification to justify his sick leave and by denying those requests pending receipt of administratively acceptable medical evidence.

¶59    The appellant also argues on review that, pursuant to "standard personnel practice" and agency policy, as set forth in AI 67, the agency should have placed him on LWOP rather than AWOL pending the resolution of his leave issues. PFR File, Tab 5 at 21. We have reviewed the AI 67 provisions pertaining to LWOP and they do not support the appellant's claim. I-1 IAF, Tab 10 at 65-67. Under AI 67, absent an emergency, an employee must request LWOP on an OPM Form 71, LWOP is normally granted at the agency's discretion, and an employee has no entitlements to LWOP, except under certain circumstances, none of which apply here. *Id.* at 65-66. The record does not indicate that the appellant requested LWOP and, in any event, given that the authorization of LWOP is within the

agency's discretion, we discern no error in the agency's decision not to place the appellant on LWOP during the period at issue in this appeal.

*The administrative judge correctly found that the appellant failed to prove his whistleblower reprisal affirmative defense.*

¶60 Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that independently could form the basis of an IRA appeal, once the agency proves its adverse action by a preponderance of the evidence, the appellant must demonstrate by preponderant evidence that he made a protected disclosure or engaged in protected activity and that the disclosure or activity was a contributing factor in the adverse action. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). If an appellant meets that burden, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity. 5 U.S.C. § 1221(e)(2); *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶61 In addressing the appellant's whistleblower reprisal claim in the context of his removal appeal, the administrative judge reasserted his finding that the appellant's assertions about PFPA's lack of acquisition authority did not constitute a protected disclosure. ID at 31. He therefore found that the appellant failed to prove this affirmative defense. *Id.* In the alternative, the administrative judge found that, even if the appellant had established that his disclosures were protected, the agency proved by clear and convincing evidence that it would have removed him absent his protected disclosures. ID at 31-32.

¶62 For the reasons discussed above, we agree with the administrative judge that the appellant failed to prove that he made a protected disclosure. Therefore, we discern no reason to disturb the administrative judge's finding that the

appellant failed to prove his affirmative defense of whistleblower reprisal.[10] Because we have found that the appellant failed to prove that he made a protected disclosure, it is unnecessary to decide whether the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of his disclosure. *See Clarke*, 121 M.S.P.R. 154, ¶ 19 n.10. Accordingly, we vacate the administrative judge's findings concerning whether the agency proved by clear and convincing evidence that the agency would have removed the appellant in the absence of his disclosures.

*The doctrine of equitable estoppel is inapplicable.*

¶63    The appellant also argues on review that the agency is equitably estopped from removing him because it did not propose his removal until 4 months after he resumed administrative leave in November 2014, and no one suggested that he was still required to submit medical documentation in support of his October 2014 leave request or that his failure to submit this documentation several months after he returned to administrative leave would jeopardize his employment status. PFR File, Tab 5 at 25-27. He asserts that he reasonably relied on "the state of affairs" and believed that the October 2014 leave dispute was superseded by his return to administrative leave. *Id.* at 26.

¶64    An appellant must show affirmative misconduct by government agents leading to unfairness in order to establish equitable estoppel against the government. *See Hanson v. Office of Personnel Management*, 833 F.2d 1568, 1569 (Fed. Cir. 1987). The appellant has presented no evidence that the agency intentionally misled him into believing that he was no longer subject to discipline

---

[10] Although the administrative judge did not address the appellant's whistleblower reprisal affirmative defense until after he determined that removal was a reasonable penalty, we find that any error in that regard does not provide a basis for disturbing the initial decision, as the result would be the same in either case. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

for being AWOL, nor did the agency ever affirmatively state that it no longer intended to propose the appellant's removal. In fact, the agency informed him in a letter that he could be disciplined for failure to submit documentation supporting a request for sick leave. W-2 AF, Tab 18 at 27-28. Moreover, an agency's failure to take disciplinary action in the past does not give an appellant a reasonable basis to assume that the agency will not take action, nor does it impose an obligation on the agency to give advanced notice of any proposed action. *Egleberry v. Department of the Air Force*, 27 M.S.P.R. 217, 218-19 (1985). Therefore, we find that the doctrine of equitable estoppel does not apply here.

*The administrative judge properly found that the agency proved nexus between the charged misconduct and the efficiency of the service, and that the removal penalty was reasonable.*

¶65    The Board has held that sustained charges of AWOL and failure to follow instructions are inherently connected to the efficiency of the service. *See Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 24 (2014); *Adams v. Department of Labor*, 112 M.S.P.R. 288, ¶ 8 (2009). Thus, the administrative judge properly found that the agency established nexus between the sustained charges and the efficiency of the service. ID at 28.

¶66    When all of the charges are sustained, the Board will modify an agency's chosen penalty only if the agency failed to weigh the relevant factors or if the agency's decision clearly exceeded the limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). The Board places primary importance upon the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities. *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 282 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table). The Board has recognized that being AWOL is a serious offense that warrants a severe penalty. *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 39 (1998).

¶67    The decision letter and the deciding official's written *Douglas* factors analysis demonstrate that he considered the relevant *Douglas* factors in making his penalty determination, including the seriousness of the offense and the appellant's job level. I-1 IAF, Tab 9 at 23-27, 36-38. The deciding official found that the appellant's misconduct was serious and that, as a senior-level employee, the appellant was held to a higher standard. *Id.* at 23-24, 36. The deciding official also found the appellant's rehabilitation potential an aggravating factor, as the appellant had failed to acknowledge wrongdoing or accept responsibility for his actions. *Id.* at 26, 37. The deciding official considered the appellant's lengthy service, the absence of prior discipline, and his past acceptable performance as mitigating factors, but found that they were insufficient to outweigh the seriousness of his misconduct. *Id.* at 24, 37.

¶68    In assessing the reasonableness of the penalty, the administrative judge found that the deciding official properly weighed the relevant factors in determining that removal was an appropriate penalty, and that his decision to remove the appellant was reasonable. ID at 30. Recognizing that the Board must accord proper deference to the agency's primary discretion in managing its workforce, we see no reason to disturb this finding. *See Douglas*, 5 M.S.P.R. at 306. Thus, we find that the administrative judge properly sustained the appellant's removal.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. [5 C.F.R. § 1201.113](). You may obtain review of this final decision. [5 U.S.C. § 7703]()(a)(1). By statute, the nature of

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions to provide a comprehensive summary of all available review options. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                          /s/ for
                                   _____
                                   Jennifer Everling
                                   Acting Clerk of the Board

Washington, D.C.